UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: PLATINUM PROPERTIES, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 11-05140-BHL-11 |
| | ) | |
| In re: PPV, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 11-05141-FJO-11 |
| | ) | |
| PLATINUM PROPERTIES, LLC and PPV, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. ___ |
| | ) | |
| PNC BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS AND DISALLOW CLAIMS OF DEFENDANT

Platinum Properties, LLC ("Platinum") and PPV, LLC ("PPV"; together with

Platinum, the "Debtors"), by counsel, for their Complaint against PNC Bank, N.A. ("PNC"),

state that:

### JURISDICTION & VENUE

1.      This adversary proceeding (the "Adversary Proceeding") arises in and is

related to the above-captioned bankruptcy cases (the "Chapter 11 Cases") which are being filed

concurrently with this Complaint under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Indiana,

Indianapolis Division (the "Court").

2.      This Adversary Proceeding is brought pursuant to Sections 547 and 550 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3.      This Court has jurisdiction over the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4.      This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

6.      Platinum is a residential real estate developer.  It is in the business of manufacturing and selling residential real estate lots.  It acquires land, designs the project, obtains zoning and other approvals, constructs roads, drainage, utilities, and other infrastructure of residential subdivisions, then sells the finished, platted lots.

7.      PPV is essentially a joint venture between Platinum and a non-debtor entity, Pittman Partners, Inc., each of whom hold an equity interest in PPV.  PPV owned four projects directly, and owns 100% of the membership interest of Sweet Charity Estates, LLC, which developed a project known as "Westmont."  Only one of PPV's four projects, Long Ridge Estates, is currently active, as the other three projects are now sold out.  Platinum has a 65% interest in the proceeds of lot sales out of Long Ridge Estates, after all of Platinum's equity investment in that project has been returned.

8.      Platinum currently owns and is developing and marketing five projects: Abney Glen, Bellewood, Countryside, Maple Knoll (excluding sections 4A and 4B), and Mount Vernon Trails.  In addition, Platinum has an ownership interest in several special purpose entities

2

("SPEs") that in turn own, operate and manage individual projects.  One of these SPEs is Reserve at Steeplechase, LLC.

9.      The Debtors are victims of the well publicized collapse of the residential housing market that began in early 2006.  Although the Debtors increased their market share of lots sold from 2006 to 2010, total lots sold by the Debtors plummeted.  This deterioration of top line revenue has severely challenged the Debtors' ability to sustain their operations.

10.     PNC was the lender on three projects with loans that matured in late 2009 as follows:  Heather Knoll (owned by PPV), Westmont (owned by Sweet Charity Estates, LLC, which in turn is 100% owned by PPV), and Reserve at Steeplechase (owned by Reserve at Steeplechase, LLC, which in turn is 100% owned by Platinum).

11.     PNC filed foreclosure suits in Hamilton County on each of the three projects alleging that each of the defendant SPEs and the defendant guarantors (including Platinum and/or PPV) owed an antecedent debt to PNC.

12.     PPV sold out all of the lots at Heather Knoll and paid off PNC in full with respect to that debt before the PNC foreclosure action for that project went to judgment.

13.     On January 25, 2011, the Hamilton County court signed judgments in favor of PNC against the Westmont project in the amount of $10,202,614.99, and against the Reserve at Steeplechase project in the amount of $5,963,631.63 (collectively the "PNC Judgments").

14.     The judgment against the Westmont project was against the SPE owner of the project (Sweet Charity Estates, LLC) and against, among others, PPV and Platinum as guarantors.

15.     The judgment against the Reserve at Steeplechase Project was against the

3

SPE owner of the project (Reserve at Steeplechase, LLC) and against, among others, Platinum as guarantor.

16.    The PNC Judgments were signed by the Court on January 25, 2011, file-stamped on January 26, 2011, listed on the Chronological Case Summary on January 27, 2011 and entered in the judgment docket on February 16, 2011.

17.    Pursuant to Ind. Code § 34-55-9-2, the PNC Judgments constitute a lien against property owned by the Debtors in "the county where the judgment has been duly entered and indexed in the judgment docket."  The PNC Judgments have been entered and indexed in the judgment docket in Hamilton County and therefore constitute liens against Debtors' property in Hamilton County (the liens constituted by the PNC Judgments shall be referred to as the "PNC Liens.")

18.    Since PNC obtained the PNC Judgments, the Debtors have been required to obtain partial judgment releases from PNC in order to sell lots in the projects owned by the Debtors.

19.    PNC has used its position as judgment lien holder to delay closings, and in one circumstance, in connection with the refinancing of the Sonoma 5 section of the Maple Knoll project, extracted a payment of $34,000 from the closing ("PNC Payment") as a condition to delivering a partial release of judgment.

20.    On April 25, 2011 (the "Petition Date"), the Debtors filed with the Court their voluntary petitions for relief under chapter 11 the Bankruptcy Code.

4

### COUNT I - CLAIM FOR AVOIDANCE OF LIEN TRANSFER AS
### A PREFERENTIAL TRANSFER MADE ON OR WITHIN NINETY (90)
### DAYS OF THE PETITION DATE

21.     The Debtors reallege and incorporate by reference the allegations

contained in paragraphs 1-20 as fully set forth herein.

22.     The PNC Liens are property interests.  The creation of the PNC Liens (the

"Lien Transfers") and the payment of the PNC Payment (the "Payment Transfer") are transfers of

interests of the Debtors in property.

23.     The Lien Transfers were to or for the benefit of PNC as a creditor of the

Debtors.

24.     The Lien Transfers were transfers of the Debtors' interests in property on

account of an antecedent debt owed by the Debtors before such transfers were made.

25.     The Lien Transfers were made while the Debtors were insolvent as that

term is defined under the Bankruptcy Code.

26.     The Lien Transfers were made on or within ninety (90) days before the

Petition Date.

27.     The Lien Transfers enabled PNC to recover more than it would have

received as a creditor if:  (i) the Bankruptcy Cases were cases under Chapter 7 of the Bankruptcy

Code; (ii) the Lien Transfers had not been made; and (iii) the Defendant had received payment of

its debt to the extent provided by the Bankruptcy Code.  Without the PNC Liens, PNC would

have the same status as unsecured creditors of the Debtors and would not receive a dollar for

dollar recovery on its claims.

28.     Pursuant to Section 551 of the Bankrupcty Code, the Lien Transfers

should be preserved for the benefit of the respective estates of PPV and Platinum.

BDDB01 6641623V1

## COUNT II - CLAIM FOR AVOIDANCE OF PAYMENT TRANSFER AS A PREFERENTIAL TRANSFER MADE ON OR WITHIN NINETY (90) DAYS OF THE PETITION DATE

29.     The Debtors reallege and incorporate by reference the allegations contained in paragraphs 1-28 as fully set forth herein.

30.     The Payment Transfer was to or for the benefit of PNC as a creditor of the Platinum.

31.     The Payment Transfer was a transfer of Platinum's interests in property on account of an antecedent debt owed by Platinum before such transfer were made.

32.     The Payment Transfer was made while Platinum was insolvent as that term is defined under the Bankruptcy Code.

33.     The Payment Transfer was made on or within ninety (90) days before the Petition Date.

34.     The Payment Transfer enabled PNC to recover more than it would have received as a creditor if:  (i) the Bankruptcy Case were a case under Chapter 7 of the Bankruptcy Code; (ii) the Payment Transfer had not been made; and (iii) the Defendant had received payment of its debt to the extent provided by the Bankruptcy Code.  Without the Payment Transfer, PNC would have the same status as unsecured creditors of Platinum and would not receive a dollar for dollar recovery on its claims.

35.     Pursuant to Section 551 of the Bankrupcty Code, the Payment Transfer should be preserved for the benefit of the Platinum's estate.

6

BDDB01 6641623V1

## COUNT III - CLAIM FOR RECOVERY OF A
## PREFERENTIAL TRANSFER MADE ON OR WITHIN NINETY (90)
## DAYS OF THE PETITION DATE

36.     The Debtors reallege and incorporate by reference the allegations contained in paragraphs 1-35 as fully set forth herein.

37.     PNC is the initial transferee of the PNC Payment.

38.     Pursuant to Section 550(a) of the Bankruptcy Code, Platinum, on behalf of the estate, is entitled to recover from PNC the amount of the PNC Payment, plus interest thereon to the date of payment and plus allowable costs and expenses.

## COUNT IV - DISALLOWANCE OF CLAIMS

39.     The Debtors reallege and incorporate by reference the allegations contained in paragraphs 1-38 as fully set forth herein.

40.     Pursuant to Section 502(d) of the Bankruptcy Code, any claim of PNC against Platinum's estate must be disallowed until such time as PNC pays the amount for which it is liable under Section 550 of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an Order granting the following relief:

(a)     judgment avoiding the Lien Transfers pursuant to Section 547(b) of the Bankruptcy Code;

(b)     judgment avoiding the Payment Transfer pursuant to Section 547(b) of the Bankruptcy Code;

(c)     judgment against PNC recovering the sum of $34,000, together with interest thereon from the date of the payment, pursuant to Section 550 of the Bankruptcy Code;

(d)     the disallowance of any claim of PNC against Platinum's estate pursuant to Section 502 of the Bankruptcy Code; and

(e)     all other just and proper relief.

BDDB01 6641623V1

Respectfully submitted,

BAKER & DANIELS LLP

By:   /s/ Jay Jaffe

Jay Jaffe (#5037-98)
Jennifer A. Pearcy (#27460-29)
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-4687
Facsimile: (317) 569-4800
jay.jaffe@bakerd.com
jennifer.pearcy@bakerd.com

Shiv Ghuman O'Neill (#23280-53A)
Kayla D. Britton (#29177-06)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
shiv.oneill@bakerd.com
kayla.britton@bakerd.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

8

BDDB01 6641623V1