UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: PLATINUM PROPERTIES, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 11-05140-BHL-11 |
| | ) | |
| In re: PPV, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 11-05141-FJO-11 |

**FIRST DAY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

Platinum Properties, LLC ("Platinum") and PPV, LLC ("PPV"; PPV and Platinum are collectively referred to as the "Debtors"), the debtors and debtors in possession in the above captioned chapter 11 cases ("Chapter 11 Cases"), file this motion ("Cash Collateral Motion") for entry of interim and final orders authorizing use of cash collateral pursuant to Sections 105(a), 363(c)(2), and 507(b) of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 4001(b), (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The proposed form of the interim order (the "Interim Order") is attached hereto as Exhibit A.  A proposed final order will be submitted in advance of the final hearing on this Cash Collateral Motion.

In support of this Cash Collateral Motion, the Debtors rely on the Declaration of Steven R. Edwards in Support of First-Day Pleadings (the "Edwards Declaration"), and may present additional evidence at the final hearing on the Cash Collateral Motion.

In further support of this Cash Collateral Motion, the Debtors respectfully represent as follows:

**JURISDICTION**

1. On April 25, 2011 ("Platinum Petition Date"), Platinum filed with the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the

"Court"), its voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing Platinum's chapter 11 case.

2. On April 25, 2011 ("PPV Petition Date" and together with the Platinum Petition Date, collectively, the "Petition Date"), PPV filed with the Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing its chapter 11 case.

3. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed.

5. This Court has jurisdiction to consider this Cash Collateral Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief sought herein are Sections 105(a), 361, 363(c)(2) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 4001(b), (d), and 9014.

7. This Cash Collateral Motion is a "First Day Motion" as defined and provided for under Rule B-9013-3 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "Local Bankruptcy Rules").

8. Pursuant to Local Bankruptcy Rule B-9013-3, the Court shall schedule and conduct a hearing on the First Day Motion within two business days (if possible) of the filing of a First Day Motion.

**BACKGROUND AND EVENTS LEADING TO FILING**

9. As more fully set forth in the Edwards Declaration, Platinum is a residential real estate developer. Platinum acquires land, designs the projects, obtains zoning and other approvals, and constructs roads, drainage, utilities, and other infrastructure of residential subdivisions. Platinum then sells the finished, platted lots. Platinum also has an ownership

interest in several special purpose entities ("SPEs") that in turn own, operate and manage individual projects.

10. PPV is essentially a joint venture between Platinum and a non-debtor entity, Pittman Partners, Inc., each of whom hold an equity interest in PPV. PPV owned four projects directly and owns 100% of the membership interest of Sweet Charity Estates, LLC. As of the Petition Date, only one of PPV's four projects is active, and Platinum has a 65% equity interest in the proceeds of the lots sold at that remaining project, after all of Platinum's equity investment in the project has been returned.

11. The Debtors are victims of the well-publicized collapse of the residential market that began in early 2006. Although the Debtors increased their market share of lots sold from 2006 to 2010, total lots sold by the Debtors plummeted. This deterioration of top line revenue has severely challenged the Debtors' ability to sustain their operations.

12. The Debtors have taken many measures to prevent the filing of the Chapter 11 Cases, including entering into formal or informal forbearance agreements or loan extension agreements with most of the lenders on the projects of the Debtors or their related SPEs. The filing of the Debtors' Chapter 11 Cases was precipitated by the foreclosure judgments in favor of PNC Bank, N.A. ("PNC"). PNC used its judgment lien to impair, delay, or increase the cost of lot closings, thereby further impairing the Debtors' cash flow and necessitating the filing of the Chapter 11 Cases.

13. A more in depth discussion of the business, creditors, and circumstances of the Debtors is set forth in the Edwards Declaration, which is incorporated by reference herein.

## RELIEF REQUESTED

### A. Summary of Relief

14. By this Cash Collateral Motion, Debtors seek the entry of the Interim Order and a final order authorizing the use of cash and cash equivalents in which the project lenders have a lien. The project lenders have a lien on lots and the proceeds of lot sales, which are considered "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code. Without the use of cash collateral, the Debtors may be unable to continue the normal operation of its business. As the Debtors have an immediate and compelling need to use the cash collateral – without which they may not be able to operate their business on a normal basis – the Debtors seek authority to use the cash collateral under an Interim Order until a final hearing on this Cash Collateral Motion can be held. At the final hearing, the Debtors will seek continued use of cash collateral to operate their business and comply with their obligations as debtors in possession.

### B. The Debtors' Need for Use of Cash Collateral

15. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as, inter alia, cash, deposit accounts, or other cash equivalents, whenever acquired, in which the estate and an entity other than the estate have an interest, and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under the Bankruptcy Code.

16. Cash and cash equivalents received by the Debtors from and after the Petition Date as lot sale proceeds will constitute cash collateral of the project lenders ("Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code. In order for the Debtors to operate their business in a normal fashion and preserve their bankruptcy estate, it is

critical that the Debtors have immediate authorization to use such Cash Collateral pursuant to the terms and conditions proposed herein.

17. In addition to allowing the Debtors' business to continue on a normal basis, authorizing the use of Cash Collateral will enable the Debtors to (i) utilize their existing and available financial resources, (ii) engender confidence in vendors and allow the Debtors to purchase goods and services on normal trade terms, (iii) pay their operating expenses, and (iv) fund payments that will be required pursuant to other orders of this Court.

18. Concurrently herewith, the Debtors have filed a motion (the "Sale of Lots Motion") for an order (a) authorizing the Debtors to sell lots in the ordinary course of business free and clear of liens and (b) authorizing and directing the Debtors to escrow the Lender Proceeds (as hereinafter defined) with the liens of the applicable project lender to attach to the Lender Proceeds pending negotiation of adequate protection agreements or the Court ordering otherwise. The Lender Proceeds are equal to the lot proceeds remaining after Debtors have retained the Operating Proceeds. The Operating Proceeds are equal to the same percentage or amount of the proceeds of the sale of lots as the Debtors were permitted by project lenders to retain and use under the prepetition agreements with the project lenders.

19. The Debtors will need to use the Operating Proceeds to fund its ongoing business operations. Prior to filing their bankruptcy cases, the Debtors consulted with all of their project lenders and kept them advised with respect to the events that may precipitate the need for a bankruptcy filing. Most, if not all, of the lenders expressed their desire that the Debtors continue to operate and manage their projects. In other words, the project lenders collectively felt that their lot collateral was more valuable with the Debtors alive than dead.

C. **Applicable Authority**

20. The Debtors propose that, as an interim arrangement, the Debtors continue to receive the Operating Proceeds from the sale of lots. The project lenders will be adequately protected in connection with the Debtors' use of the Operating Proceeds by virtue of the fact that the Debtors will continue in operation, adding value to the project lenders' lot collateral through the Debtors' continued management and operation of the projects. The project lenders will be further adequately protected by the Debtors' escrow of the Lender Proceeds, pending negotiation of more comprehensive adequate protection agreements with each project lender or further order of the Court.

21. Section 363 of the Bankruptcy Code permits a debtor to use cash collateral upon the provision of adequate protection if the entity that has an interest in such cash collateral consents, or the court, after notice and a hearing, authorizes the use of cash collateral. 11 U.S.C. § 363(c)(2). If an entity that has an interest in cash collateral makes a request, the court may condition use of cash collateral as necessary to provide adequate protection of those interests. 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code provides substantial flexibility in connection with the type of adequate protection required under Section 363 of the Bankruptcy Code.

22. By this motion, the Debtors ask the Court to authorize the Debtors to use cash collateral. The Debtors anticipate that the project lenders, with interest in cash collateral, may seek to condition that use on the provision of adequate protection. The Debtors submit that, on an interim basis and pending negotiation of more comprehensive adequate protection agreements with its projects lenders or further order of this Court, permitting the Debtors to continue to use the Operating Proceeds, while escrowing the Lender Proceeds, and permitting the

Debtors to continue to operate and manage the project to preserve the unsold lot sale collateral value, constitutes adequate protection of the interests of the project lenders.

### D.    Interim Approval Of the Use of Cash Collateral Should be Granted

23. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of a motion requesting such use. Therefore the Debtors are first requesting entry of an Interim Order providing for interim use of Cash Collateral pending a final hearing ("Final Hearing") on the Cash Collateral Motion.

24. The proposed Interim Order provides for use of Cash Collateral, subject to the terms and conditions set forth in the Interim Order. The proposed Interim Order would allow continued use of Cash Collateral until the earlier of the close of business on May 27, 2011, or the entry or denial of a final order ("Interim Cash Collateral Period").

25. Under the proposed Interim Order, the Debtors would be authorized to use Cash Collateral during the Interim Cash Collateral Period to pay the necessary and reasonable expenses of operating their businesses, including, without limitation, payroll expenses, utility services, payroll taxes, insurance, supplies and equipment, vendor and supplier services, and other expenditures as are necessary for operating the Debtors' businesses. The Debtors would also be authorized to utilize Cash Collateral during this period to make payments authorized under other orders entered by this Court, including for payment of professional and other administrative expenses.

26. The Debtors do not believe that the use of the Cash Collateral as requested herein will result in any diminution in the project lenders' positions during the Interim Cash

Collateral Period and accordingly request that use of Cash Collateral pursuant to the Interim Order be granted.

27. The Debtors believe that the terms and conditions of the Interim Order are fair and reasonable under the circumstances.

28. Because the use of Cash Collateral by the Debtors is necessary to prevent the irreparable harm that would befall the Debtors, their estates, their creditors and employees if the Debtors' businesses cease operations, the Court should authorize the Debtors' use of Cash Collateral and enter the Interim Order in the form of Exhibit A.

### E. The Final Hearing and Continued Use of Cash Collateral

29. The Debtors also respectfully request that the Court schedule the Final Hearing on a date prior to the expiration of the Interim Cash Collateral Period. The intervening period will allow the parties sufficient time to attempt to achieve a consensual resolution on the use of Cash Collateral going forward, and, failing that, to prepare for a Final Hearing. The Debtors contemplate that separate stipulations will be negotiated with each project lender. At least three (3) days prior to the Final Hearing, the Debtors will provide to the Court and other specified parties-in-interest proposed stipulations and/or a proposed Extended Interim or Final Order. The Debtors are hopeful that a proposed Final Order will complement project lender stipulations and be presented with the consent of the project lenders, and intends to work diligently to reach such agreements. If the Debtors are unable to reach such agreements, the Debtors will present a proposed Extended Interim or Final Order containing terms that they believe (i) are necessary for the continued normal operation of their businesses and the preservation of the estates, and (ii) adequately protect the interests of the project lenders.

30. At the Final Hearing, Debtors intend to request that the Court grant the continued use of Cash Collateral through to the earlier of the effective date of a confirmed chapter 11 plan or the dismissal or conversion of the Chapter 11 Cases.

## NOTICE

31. On or prior to the date hereof, the Debtors have provided notice of this Cash Collateral Motion, by telephone, telecopy, electronic mail, overnight delivery service, hand delivery or by regular mail, to (i) the office of the United States Trustee for the Southern District of Indiana; (ii) the Internal Revenue Service; (iii) the Debtors' consolidated twenty (20) largest general unsecured creditors (to the extent practicable); (iv) all secured creditors, including the project lenders; and (v) any party who has filed an appearance and served same on the Debtors prior to service ("Initial Notice Parties").

32. Within five (5) business days following entry of the Interim Order, the Debtors propose to provide notice of the Cash Collateral Motion, and a copy of the Interim Order and notice of the Final Hearing, by mail to each of the Initial Notice Parties and, without duplication, to (i) parties who have filed a request for service prior to such date, and (ii) counsel to any committee. The Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(b).

33. Debtors request that the Interim Order provide that objections to the proposed Final Order (which will be filed with the Court by the Debtors no later than three (3) days before the Final Hearing), shall be in writing and served upon counsel for the Debtors, the United States Trustee, and the committee (if then formed), no later than 4:00 p.m. EDT, two (2) days prior to the Final Hearing.

## **NO PRIOR REQUEST**

34. No previous request for the relief sought in this Cash Collateral Motion has been made to the Court in the Chapter 11 Cases.

WHEREFORE, the Debtors respectfully request that the Court (i) schedule an immediate hearing on the proposed Interim Order; (ii) after the hearing, enter the Interim Order in substantially the form of attached Exhibit A; (iii) schedule a Final Hearing; (iv) enter an order authorizing the continued use of Cash Collateral on the terms and conditions set forth in the proposed order to be filed by Debtors with the Court no later than three (3) days before the Final Hearing; and (v) grant such other and further relief as is just and proper.

Respectfully submitted,

BAKER & DANIELS LLP

By:  /s/ Jay Jaffe

Jay Jaffe (#5037-98)
Jennifer A. Pearcy (#27460-29)
Baker & Daniels LLP
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-4687
Facsimile: (317) 569-4800
jay.jaffe@bakerd.com
jennifer.pearcy@bakerd.com

Shiv Ghuman O'Neill (#23280-53A)
Kayla D. Britton (#29177-06)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
shiv.oneill@bakerd.com
kayla.britton@bakerd.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*