UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PLATINUM PROPERTIES, LLC, et al.,[1] | ) | Case No. 11-05140 |
| | ) | |
| Debtors. | ) | JOINTLY ADMINISTERED |

### STIPULATION AND AGREED ENTRY OF PLATINUM PROPERTIES, LLC AND BANK OF AMERICA AUTHORIZING PLATINUM PROPERTIES, LLC'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

On April 26, 2011, Platinum Properties, LLC ("Platinum") and PPV, LLC ("PPV"; and together with Platinum the "Debtors") filed their First Day Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion"). The Cash Collateral Motion sought the entry of a general, interim order granting the Debtors authority to use Cash Collateral (the "Interim Order") until such time as the Debtors negotiated a more comprehensive adequate protection agreement with a lender on one of the Debtors' real estate development projects (a "Project Lender"), or further order of the Court. Platinum and Bank of America as successor by merger to LaSalle Bank National Association ("Bank") have agreed to an adequate protection agreement in lieu of, or to take the place of, the Interim Order (this "Stipulation and Agreed Entry"). Accordingly, Platinum and the Bank stipulate and agree (the "Stipulation") as follows:

1. On April 25, 2011 (the "Petition Date"), the Debtors commenced the cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue in possession of their property and operate their business as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

---

[1] The Debtor entities are Platinum Properties, LLC and PPV, LLC.

2. This Court has jurisdiction over this Stipulation and Agreed Entry pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This proceeding presents a core proceeding under 28 U.S.C. § 157(b)(2).

3. Notice of the Cash Collateral Motion has been given in accordance with Federal Rule of Bankruptcy Procedure 4001 and Southern District of Indiana Local Rule B-9013-3.

4. The Cash Collateral Motion is a "First Day Motion" under Southern District of Indiana Local Rule B-9013-3(c).

5. Platinum is indebted to Bank pursuant to and under (i) that certain Construction Loan Agreement dated February 3, 2005 with Bank (as amended by the Loan Amendment, Consent to Loan Amendment and Reaffirmation of Guaranties dated October 10, 2005, the Amendment to Loan Documents dated December 20, 2005, the Amendment to Construction Loan Agreement, Loan Documents and Reaffirmation of Guaranties dated October 27, 2006, the Second Amendment to Construction Loan Agreement, Loan Documents and Reaffirmation of Guaranties dated February 28, 2007, and the Third Amendment to Construction Loan Agreement, Loan Documents and Reaffirmation of Guaranties dated February 28, 2008, the "Loan Agreement") relating to a construction loan in the original principal amount of $20,000,000 and (ii) that certain Revolving Promissory Note from Debtor in favor of Bank dated February 3, 2005 in the principal amount of $20,000,000 (together with all amendments thereto, allonges attached thereto, or restatements thereof, and as may be amended, modified and renewed from time to time, the "Note").

6. On or about July 1, 2010, Platinum and Bank entered into that certain Forbearance Agreement (together with all ancillary agreements, side letter agreements, and

amendments thereto, or restatements thereof, and as may be amended, modified and renewed from time to time the "Forbearance Agreement").

7.      Bank asserts, and Platinum preliminarily agrees, that Bank has a valid and enforceable first priority properly perfected security interest in and lien on, *inter alia*, certain real estate, fixtures and personal property relating to its Maple Knoll project (collectively, the "Maple Knoll Collateral") pursuant to and as more fully defined and described in (i) that certain Construction Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated February 3, 2005 (as amended by the Amendment to Construction Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated December 20, 2005, and the Second Amendment to Construction Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated February 28, 2008, the "Mortgage"); (ii) that certain Assignment of Plans, Specifications, Construction and Service Contracts, Licenses and Permits dated February 3, 2005 (the "Assignment of Plans, Specifications, Contracts, Licenses and Permits"); and (iii) that certain Assignment of Lot Purchase Agreements dated February 3, 2005 (the "Assignment of Lot Purchase Agreements" and with the Loan Agreement, Note, Forbearance Agreement, Mortgage, Assignment of Plans, Specifications, Contracts, Licenses and Permits, and all documents, instruments, and agreements delivered in connection with the foregoing, as amended, supplemented, renewed, or otherwise modified, collectively, the "Loan Documents").

8.      Platinum's cash and cash equivalents that constitute proceeds of the sale of Maple Knoll Collateral on and after the Petition Date securing Platinum's obligations to Bank, among other things, constitute "cash collateral" (as that term is defined in § 363(a) of the Bankruptcy Code) ("Maple Knoll Cash Collateral"). The Bank asserts, and Platinum preliminarily agrees,

that Bank has a valid and enforceable first priority properly perfected security interest in and lien on the Maple Knoll Cash Collateral.

9. The indebtedness owed to Bank by Platinum under the Loan Documents as of the Petition Date is approximately $10,683,460.37 in principal, plus accrued interest, costs, fees, charges and expenses.

10. Platinum cannot operate its business or manage its property without maintaining its business operations, paying for necessary services, and satisfying its other working capital needs in the ordinary course of business.

11. Platinum must have immediate interim authority to use the Maple Knoll Cash Collateral in order to continue its operations without interruption and allow it to achieve a successful reorganization.

12. Platinum will use the Maple Knoll Cash Collateral for ordinary and necessary operating expenses, including without limitation, the reasonable and customary expenses normally identified on a HUD-1 Settlement Statement, payroll expenses, utility services, payroll taxes, insurance, supplies and equipment, vendor and supplier services, and other expenditures as are necessary for operating the Debtors' businesses, including the Maple Knoll project and maintaining the Maple Knoll Collateral.

13. Platinum has offered Bank the following as adequate protection (collectively the "Adequate Protection Provisions") for use of the Maple Knoll Cash Collateral:

    a. Platinum agrees to maintain insurance on the Maple Knoll Collateral;

    b. Platinum will use the Maple Knoll Cash Collateral for the operation, maintenance and upkeep of the Maple Knoll Collateral and for expenses incurred in the ordinary course of business; using the Maple Knoll Cash

        Collateral for the operation, maintenance and upkeep of the Maple Knoll project in the ordinary course of business will protect the interests of Bank in the Maple Knoll Collateral;

c.    In addition to the reports prepared and distributed to Project Lenders prior to the Petition Date, commencing on the first day of the month after Court approval of this Stipulation and Agreed Entry, while Platinum is authorized to use the Maple Knoll Cash Collateral, Platinum shall provide Bank a monthly operating report, as agreed to by Platinum and Bank or as ordered by the Court, which shall include an actual cash statement of amounts spent in the previous month;

d.    Platinum shall within two (2) business days of the occurrence of the same, promptly give Bank notice of the occurrence of any event or any matter which has resulted or will result in a material adverse change in the business, assets, operations or financial condition of Platinum;

e.    to the extent that any of the Maple Knoll lots are sold at the listed minimum price (or higher) as set forth in the Loan Documents (the "Minimum Lot Sales Price"), the Release Price (as defined in the Loan Documents) shall be an amount equal to the greater of (i) eighty-five percent (85%) of the net sales price of the residential lot or parcel at the specific project at which the lot is sold (such net sales price being the gross sales price less customary broker commissions and closing costs), or (ii) 100% of the Minimum Lot Sales Price; and if the foregoing criteria are met, Platinum shall immediately pay the Release Price to Bank to be

applied against the indebtedness owed to Bank by Platinum as provided under the Loan Documents (the "Bank Lot Sale Proceeds"). If the lot sale proceeds exceed the Release Price, Platinum may use the lesser of two-thirds (2/3) of the balance remaining after the Bank Lot Sale Proceeds and ten percent (10%) of the lot sales proceeds, plus the Road Impact Fees (as defined in the Loan Documents) collected by Platinum as Maple Knoll Cash Collateral (the "Operating Proceeds"), and Platinum shall deposit the lesser of one-third (1/3) of the balance remaining after the Bank Lot Sale Proceeds and five percent (5%) of the lot sale proceeds (the "Professional Fee Account Funding Formula") into a segregated account (the "Professional Fee Account") for the payment of professional fees incurred in the Chapter 11 case (the "Professional Fee Proceeds");

f. Platinum anticipates that other Project Lenders will enter into similar stipulations pursuant to which a portion of lot sale proceeds will be deposited into the Professional Fee Account. In the event that a balance remains in the Professional Fee Account at the conclusion of these bankruptcy cases after all professional fees have been incurred and paid for (the "Excess Balance"), the Excess Balance will be returned to the Bank and other Project Lenders in the same proportion as the Bank and other Project Lenders lot sale proceeds were contributed to the Professional Fee Account. The Bank shall have a valid and enforceable first priority properly perfected lien on the Professional Fee Account, pari passu with the liens of other Project Lenders contributing to the

        Professional Fee Account, without need to file or perfect or any further documentation beyond this Stipulation and Agreed Entry, to secure the return of any Excess Balance;

g.   Platinum shall permit Bank or its agents full and free access to Platinum's books, records and place(s) of business concerning the Maple Knoll Collateral and the Maple Knoll project; and

h.   Pursuant to 11 U.S.C. § 552(b), Platinum agrees that Bank's pre-petition liens on the Maple Knoll Collateral continue post-petition as first priority, properly perfected post-petition liens on and attach to the Maple Knoll Collateral and any proceeds, products or profits from the Maple Knoll Collateral including, but not limited to, the sale or other disposition of the Maple Knoll Collateral.

14.   Platinum's use of the Maple Knoll Cash Collateral pursuant to the terms and conditions set forth herein is in the best interests of Platinum, its estate, and its creditors in that it allows Platinum to maintain its business and avoids serious irreparable harm to the estate and Platinum's creditors.

15.   Platinum must contest the validity, enforceability, priority and perfection of the Bank's security interests and liens by filing an adversary proceeding contesting such on or before May 27, 2011.

16.   Any committee(s) appointed in this bankruptcy case must contest the validity, enforceability, priority and perfection of the Bank's security interests and liens by filing an adversary proceeding contesting such on or before the sixtieth (60th) day from the committee's appointment.

17. The Cash Collateral Motion complies with Federal Rule of Bankruptcy Procedure 4001 and Southern District of Indiana Local Rule B-4001-2.

Based upon the foregoing stipulations and agreements of Platinum and the Bank and the representations of counsel made at the hearing on the Cash Collateral Motion, and good and sufficient cause appearing therefor, the Court hereby approves the Stipulation and the Adequate Protection Provisions.  Accordingly,

**IT IS HEREBY ORDERED THAT:**

A. The foregoing Stipulation of Platinum and Bank is hereby incorporated into this Stipulation and Agreed Entry as if set forth in full herein.

B. The relief provided for in this Stipulation and Agreed Entry is in lieu of, and takes the place of, the Interim Order.

C. Platinum is authorized to use the Maple Knoll Cash Collateral, subject to the terms and conditions set forth in this Stipulation and Agreed Entry.

D. Bank shall be and is entitled to the Adequate Protection Provisions as adequate protection for Platinum's use of the Maple Knoll Cash Collateral.

E. Platinum shall pay when due all taxes, insurance, assessments and governmental and other charges accrued post-petition, including any and all federal and state withholding taxes, and all property taxes related to the Maple Knoll Collateral, and shall provide to Bank, on request, copies of depository receipts or other satisfactory evidence of the same.

F. Any title insurers insuring title to the sale of any of the lots are authorized to directly pay to Bank the Bank Lot Sale Proceeds, and directly pay to Platinum (i) the Professional Fee Proceeds, which Platinum shall deposit into the Professional Fee Account and (ii) the Operating Proceeds.

G. An Event of Default for purposes of this Stipulation and Agreed Entry shall include, but not be limited to: (i) failure of Platinum to comply with any of the Adequate Protection Provisions, reporting or other obligations set forth herein, (ii) any other senior Project Lender to a property owned by the Debtors contributes to the Professional Fee Account a lesser sum than what would have been paid if calculated according to the Professional Fee Account Funding Formula or (iii) failure by Platinum to comply with any of the terms of this Stipulation and Agreed Entry.

H. Unless extended by the Court upon the written agreement of Bank, Platinum, and any committee(s) appointed in this bankruptcy case, this Stipulation and Agreed Entry and Platinum's authorization to use Maple Knoll Cash Collateral pursuant to this Stipulation and Agreed Entry will immediately terminate on the date on which Bank provides, via facsimile and electronic mail, written notice to Platinum's counsel of the occurrence of an Event of Default (as defined above) and the expiration of a three (3) business day cure period (the "Termination Date").  Before the Termination Date, Bank and Platinum shall be entitled to apply to this Court for all appropriate relief, upon such notice as may be appropriate under the circumstances; provided, however, that: (i) the obligations of Platinum and the rights of Bank with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected, and (ii) Bank and Platinum shall retain all of their respective rights and remedies under the Bankruptcy Code including, without limitation, Platinum's right to request the continued use of Maple Knoll Cash Collateral and the right of Bank to oppose Platinum's further use of Maple Knoll Cash Collateral and to move for dismissal or relief from the automatic stay.

I. In addition to other rights and remedies provided to Bank pursuant to this Stipulation and Agreed Entry and the Loan Documents, upon the occurrence of an Event of

Default (as defined above) and the filing in this Court of an affidavit by a duly authorized representative of Bank specifying the nature of such Event of Default, and request by Bank for relief under the terms hereof, Bank shall be entitled to an expedited hearing before this Court seeking the termination of the automatic stay under 11 U.S.C. § 362(a) with respect to Bank as to the Maple Knoll Collateral including, but not limited to, the Maple Knoll Cash Collateral and all other relief available under bankruptcy and other applicable law.

J.   Except as modified herein and subject to the other provisions of this Stipulation and Agreed Entry and the Bankruptcy Code, the Loan Documents, and the terms and provisions thereof, are valid and enforceable and shall remain in full force and effect.

K.   No order shall be entered in this case authorizing the estate to incur debt secured by a lien on and against the Maple Knoll Collateral which is equal to or superior to Bank's pre-petition liens or any additional liens granted by this Stipulation and Agreed Entry, without Platinum obtaining Bank's consent to same, or a court order authorizing such debt.

L.   This Stipulation and Agreed Entry shall not constitute a waiver by Bank of any of its rights under the Loan Documents, the Bankruptcy Code or other applicable law, including, without limitation:  (i) its right to assert that, notwithstanding the terms and provisions of this Stipulation and Agreed Entry, any of its interests in the Maple Knoll Collateral including, but not limited to the Maple Knoll Cash Collateral, lack adequate protection within the meaning of 11 U.S.C. §§ 362(d) or 363(e); or (ii) its right to assert any claim(s).  Bank's failure, at any time or times hereafter, to require strict performance by Platinum of any provision of this Stipulation and Agreed Entry shall not waive, affect or diminish any right of Bank thereafter to demand strict compliance and performance therewith.  No delay on the part of Bank in the exercise of any right or remedy under this Stipulation and Agreed Entry shall preclude any other or further exercise of

any such right or remedy or the exercise of any other right or remedy. None of the rights or remedies of Bank under this Stipulation and Agreed Entry shall be deemed to have been suspended or waived by Bank unless such suspension or waiver is in writing, signed by a duly authorized officer or agent of Bank, and directed to Platinum specifying such suspension or waiver.

M. This Stipulation and Agreed Entry shall not constitute a waiver by Platinum of any of its rights under the Loan Documents, the Bankruptcy Code, or other applicable law, including without limitation: (i) its right to assert that, notwithstanding the terms of this Stipulation and Agreed Entry, the Bank's interest in the Maple Knoll Collateral is adequately protected under 11 U.S.C. §§ 362 or 363; or (ii) its right to assert a claim for breach of this Stipulation and Agreed Entry.

N. By taking any actions pursuant to this Stipulation and Agreed Entry, Bank shall not: (i) be deemed to be in control of the operations of the Debtors or their estates, or (ii) be deemed to be acting as a "responsible person" with respect to the operation or management of the Debtors or their estates.

O. If this Stipulation and Agreed Entry never becomes a final and nonappealable order, if this Stipulation and Agreed Entry is terminated for any reason, or if any or all of the provisions of this Stipulation and Agreed Entry are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to the Maple Knoll Collateral including, but not limited to, the Maple Knoll Cash Collateral used prior to the effective date of such subsequent

order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Stipulation and Agreed Entry).

P.   This Stipulation and Agreed Entry shall be and remain in full force and effect notwithstanding conversion of this bankruptcy case or entry of an order appointing a trustee. Without limiting the generality of the foregoing, the liens and security interests granted to Bank shall survive expiration of this Stipulation and Agreed Entry.  Furthermore, the terms and provisions of this Stipulation and Agreed Entry shall be binding upon and inure to the benefit of Bank, the Debtors, their estates, and their respective successors and assigns including, without limitation, the Debtors, or other fiduciary who hereafter succeeds to Debtors' estates in these bankruptcy cases.

Q.   The authority to use the Maple Knoll Cash Collateral granted to Platinum by this Stipulation and Agreed Entry shall expire on the Termination Date, unless otherwise ordered by this Court.

R.   Platinum shall escrow the Professional Fee Proceeds upon the sale of each lot, as more fully set forth in paragraphs 13(e) and (f) of the foregoing Stipulation, to be used to pay professional fees incurred, after notice or application by each professional seeking payment of professional fees pursuant to orders entered by this Court, and after due and adequate notice and/or an opportunity for a hearing are provided to Bank and other parties-in-interest as provided by orders entered by this Court; provided, however, (i) in no event shall more than the amount determined in accordance with the Professional Fee Account Funding Formula be used to fund the Professional Fee Account and any Excess Balance remaining in the Professional Fee Account after all approved professional fees are paid in full shall be returned to the Bank and other contributing Project Lenders in the same proportion that the Bank and Project Lenders

contributed to the Professional Fee Account and (ii) in no event shall any part of the Professional Fee Proceeds or any Maple Knoll Cash Collateral be used to challenge the amount, validity, perfection, priority or enforceability of, or assert any defense, counterclaim or offset with respect to the indebtedness owed to Bank, the Loan Documents or the Bank's security interests and liens.

      S.      Notice of the entry of this Stipulation and Agreed Entry shall be given by the Debtors to the parties upon whom service is required by Federal Rules of Bankruptcy Procedure 2002 and 4001.

      T.      This Court has and will retain jurisdiction to enforce this Stipulation and Agreed Entry according to its terms.

      U.      This Stipulation and Agreed Entry shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the liens granted herein, including without limitation the liens to secure return of any Excess Balance from the Professional Fee Account as granted in paragraph 13(f) of the foregoing Stipulation, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the liens granted in this Stipulation and Agreed Entry.

      V.      A final hearing on this Stipulation and Agreed Entry and the Cash Collateral Motion will be held on May 25, 2011 at 1:30 p.m. in Room 103 of the United States Courthouse, 121 West Spring Street, New Albany, Indiana 47150.

      W.      **Any objections to this Stipulation and Agreed Entry must be filed and served on or before May 24, 2011 at 5:00 p.m. EDST** in accordance with S.D. Ind. L.R. B-9013-1 either on the Bankruptcy Court's website at http://www.insb.uscourts.gov or in writing with the

United States Bankruptcy Clerk, 46 East Ohio Street, Indianapolis, Indiana 46204, with a copy to (i) Debtor's counsel, Jay Jaffe and Jennifer Pearcy, Baker & Daniels, LLP, 600 East 96th Street, Suite 600, Indianapolis, Indiana 46240 and Kayla Britton, Baker & Daniels, LLP, 300 N. Meridian Street, Suite 2700, Indianapolis, Indiana 46204, and (ii) Bank's counsel Alan K. Mills and Mark R. Owens, Barnes & Thornburg LLP, 11 S. Meridian Street, Indianapolis, Indiana 46204.

**STIPULATED AND AGREED TO**:

/s/ Jay Jaffe_____
Jay Jaffe
Baker & Daniels LLP
900 East 96th Street, Suite 600
Indianapolis, IN 46240

One of the Counsel for the Debtors


/s/ Mark R. Owens_____
Alan K. Mills
Mark R. Owens
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204-3535

One of the Counsel for the Bank

BDDB01 6658460v1