UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PLATINUM PROPERTIES, LLC, et al.,[1] | ) | Case No. 11-05140 |
| | ) | |
| Debtors. | ) | JOINTLY ADMINISTERED |

**MOTION FOR ORDER AUTHORIZING DEBTOR
TO OBTAIN POSTPETITION FINANCING**

Platinum Properties, LLC, one of the debtors and debtors-in-possession (the "Debtor") in the above-captioned Chapter 11 case, files this motion (this "Financing Motion") for entry of an order authorizing the Debtor to obtain postpetition financing from the Ralph L. Wilfong, II Charitable Remainder Unitrust dated May 21, 2001 (the "Lender"). The proposed form of the order (the "Financing Order") is attached hereto as Exhibit A. In support of this Financing Motion, the Debtor states as follows:

**SUMMARY OF RELIEF REQUESTED AND TERMS OF AND CONDITIONS
TO THE CHAPTER 11 FINANCING (FRBP 4001(b) and (c) AND
LOCAL BANKRUPTCY RULE B-4001-2)**

1. By this Financing Motion, the Debtor seeks authority to secure postpetition financing to provide necessary support for continued operations and to allow the Debtor to effect a successful reorganization. The proposed postpetition financing will enable the Debtor to fund development costs for Section 4A of the Sonoma subdivision within the Debtor's Maple Knoll project ("Sonoma Section 4A"), thereby facilitating continued lot sales and providing revenue to the Debtor's estate. After arms-length negotiations, the Debtor has successfully negotiated an agreement for postpetition financing with the Lender. A copy of the Note Purchase Agreement is attached hereto as Exhibit B (the "Note Purchase Agreement"). The

---

[1] The Debtor entities are Platinum Properties, LLC and PPV, LLC.

Senior Secured Note in the principal amount of $652,000 (the "Note" and together with the Note Purchase Agreement, the "Loan Documents") is attached to the Note Purchase Agreement as Exhibit 1.

2. The DIP Financing is being offered by the Lender on terms that involve priming an existing lien and granting the Lender a first priority lien on the real property comprising Sonoma Section 4A and the proceeds thereof (the "DIP Collateral"). The current first priority lienholder, Bank of America, NA ("BOA") will be paid its agreed upon release price for Sonoma Section 4A and will release its liens on the DIP Collateral. MK Investment Group, LLC and the Christel DeHaan Revocable Trust (the "Subordinated Lenders") currently have a second priority lien behind BOA, have consented to the first priority lien to be granted to Lender and the subordination of their liens to Lender, and will continue to receive without impairment adequate protection of their interests in the DIP Collateral under an adequate protection stipulation previously approved by this Court.

3. As a companion to this Financing Motion, the Debtor and the Lender have filed a Motion (the "Cash Use Motion") to approve a Stipulation and Agreed Entry of Platinum Properties, LLC and the Ralph L. Wilfong, II Charitable Remainder Unitrust Dated May 21, 2001 Authorizing Platinum Properties, LLC's Use of Cash Collateral and Granting Adequate Protection (the "Stipulation and Agreed Entry"). The Stipulation and Agreed Entry reflects the agreement between the Debtor and the Lender allowing the Debtor to use the Lender's cash collateral and providing adequate protection to the Lender. The Lender's cash collateral consists of the Debtor's cash and cash equivalents that constitute proceeds of the sale of the lots comprising Sonoma Section 4A (the "Cash Collateral"). The Debtor will use the Cash Collateral to repay the Note, and for ordinary and necessary operating expenses. The proposed postpetition

financing and the approved use of Cash Collateral shall be collectively referred to herein as the "DIP Financing."

4. Pursuant to Rules 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor makes the following disclosures as to the terms and conditions of the proposed DIP Financing:

(a) All advances made by the Lender under the Loan Documents shall be validly secured by first priority liens on the DIP Collateral. Note Purchase Agreement, ¶ 1. As discussed above, the DIP Collateral is subject to existing liens of the Subordinated Lenders, but the Subordinated Lenders have consented to the DIP Financing and will continue to receive adequate protection of their interests.

(b) The total advances made pursuant to the Loan Documents shall not exceed $652,000. Note Purchase Agreement, ¶ 3(b). The proposed loan budget is attached hereto as Exhibit C.

(c) Advances made pursuant to the Loan Documents may be made not more frequently than monthly, and each advance requires the following:

  i. An indication of the date and amount of the proposed advance;
  ii. A description of the use of the proceeds thereof, setting forth the total amount of development costs for which the advance is requested, including a cost breakdown by category;
  iii. A title policy endorsement; and
  iv. Contractor receipts or lien waivers. Note Purchase Agreement §3(a).

(d) The Debtor may use the loan proceeds solely to pay the development and construction costs for Sonoma Section 4A. Note Purchase Agreement, ¶ 5.5.

(e) The financing shall be made at the rate of twelve percent (12%) per annum. Interest shall accrue and become payable upon each lot sale. Note Purchase Agreement, Exhibit 1.

(f) The Loan will become due and payable in full on December 31, 2013. Note Purchase Agreement, Exhibit 1.

(g) Events of default under the Note Purchase Agreement include (1) the Debtor's failure to pay principal or interest when it becomes due, (2) the

Debtor's failure to comply with any term of the Note Purchase Agreement, (3) any representation or warranty made by the Debtor proves to have been false or materially incorrect, or (4) the Debtor does not sell at least ten (10) lots on or before December 31, 2012.  Note Purchase Agreement, § 10.

(h)     The Debtor is responsible for all reasonable expenses incurred by the Lender and its counsel associated with the negotiating, documenting, and obtaining approval of the DIP Financing.  Note Purchase Agreement, ¶ 4.11.

(i)     The Lender's agreement to provide the postpetition financing is conditioned on (i) the Court's entry of an order approving the DIP Financing, and (ii) the execution of an Intercreditor and Subordination Agreement by and between the Debtor, the Lender, and the Subordinated Lenders.  Note Purchase Agreement, ¶ 4.4, 4.7

(j)     The proposed DIP Financing provides that the Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.  Financing Order, ¶ 13.

(k)     The Lender is entitled to an expedited hearing seeking termination of the automatic stay as to the DIP Collateral upon an Event of Default (as defined in the Financing Order).  Financing Order, ¶ 3.

## JURISDICTION AND VENUE

5.     On April 25, 2011 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Court"), its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code") commencing the Debtor's Chapter 11 Case (the "Chapter 11 Case").

6.     The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7.     No trustee or examiner has been appointed in the Chapter 11 Case.

8.     This Court has jurisdiction to consider this Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief sought herein are Sections 105 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c), and (d).

**BACKGROUND**

10. The Debtor is a residential real estate developer. It is in the business of manufacturing and selling residential real estate lots. It acquires land, designs the projects, obtains zoning and other approvals, and constructs roads, drainage, utilities, and other infrastructure of residential subdivisions. The sale of the finished, platted lots is the Debtor's primary source of revenue.

11. The Debtor's Maple Knoll project is a mixed use development consisting of two single-family subdivisions, three apartment or townhome projects, an office development park, a new elementary school, and a town park. One of the single-family subdivisions within the Maple Knoll mixed use development is marketed as "Sonoma." Sonoma is being developed in sections. The DIP Financing will be used to finance development and construction costs for twenty undeveloped lots in Sonoma Section 4A.

12. BOA has a first priority security interest in and lien on certain real estate, fixtures, and personal property relating to the Maple Knoll project, including Sonoma Section 4A.

13. The Subordinated Lenders hold subordinated loans secured by subordinated mortgages on certain real estate, fixtures, and personal property in the Maple Knoll project, including Sonoma Section 4A.

14. The Court granted the Debtor interim and final authority to use cash collateral. [Docket Nos. 80, 121]. The Debtor has entered into more comprehensive agreements

5

on adequate protection and the use of cash collateral with each project lender,[2] and the Court has entered orders approving each stipulation and agreed entry.

15. On May 27, 2011, the Subordinated Lenders and the Debtor filed their Amended Final Stipulation and Agreed Entry of Platinum Properties, LLC, MK Investment Group, LLC and Christel DeHaan, as Trustee of the Christel DeHaan Revocable Trust Dated December 31, 1992 Authorizing Platinum Properties, LLC's Use of Cash Collateral and Granting Adequate Protection (the "Subordinated Lenders' Stipulation") [Docket No. 112]. The Subordinated Lenders' Stipulation authorized the Debtor to use the Subordinated Lenders' cash collateral, consisting of the proceeds of the sale of lots in the Maple Knoll project, and granted the Subordinated Lenders adequate protection of their second position security interest in the Maple Knoll project. The Court entered its order approving the Subordinated Lenders' Stipulation on June 8, 2011 [Docket No. 146].

16. The Lender entered into an adequate protection agreement with PPV, LLC relating to the Long Ridge Estates project. The terms of the Stipulation and Agreed Entry between the Lender and the Debtor filed contemporaneously herewith are very similar to the terms of the existing agreement between the Lender and PPV, LLC.

## **RELIEF REQUESTED**

17. By this Financing Motion, the Debtor seeks, among other things, under Sections 105 and 364 of the Bankruptcy Code, (i) authorization to obtain postpetition financing from the Lender pursuant to the terms and conditions set forth herein, in the Financing Order, and in the Loan Documents and (ii) this Court's entry of the Financing Order, substantially in the form

---

[2] The Debtor did not enter into an adequate protection agreement with Indiana Bank & Trust ("IBT"). The Debtor negotiated, and the Court approved, a sale to IBT of the properties on which IBT holds a lien.

of attached Exhibit A, which has been negotiated with, and the Debtor believes is acceptable to, the Lender.

### BASIS FOR RELIEF

18. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and hearing, may authorize the debtor to obtain credit or incur debt:

> (a) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; or
>
> (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (c) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

19. If a debtor is unable to obtain credit under the provisions of Section 364(c) of the Bankruptcy Code, the debtor may obtain credit "secured by a senior or equal lien on property of the estate that is already subject to a lien," commonly called a priming lien. 11 U.S.C. § 364(d). Relief under this section is limited to situations in which the existing lienholder receives adequate protection of its interest or the existing lienholder consents. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564-65 (3d Cir. 1994). Adequate protection is required to the extent that the existing lienholder's interest is diminished by the granting of a priming lien. *In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 752 (Bankr. S.D. Fla. 2010).

20. Rules 4001(b) and (c) of the Bankruptcy Rules govern the procedures for approving use of cash collateral and obtaining authorization to obtain postpetition financing and provide, in relevant part, "The court may commence a final hearing on a motion for [authorization to use cash collateral (4001(b)(2)] [authority to obtain credit (4001(c)(2)] no

7

earlier than 14 days after service of the motion." Accordingly, the Court is authorized to grant the relief requested herein after notice and a hearing.

21. The interests of the Subordinated Lenders will not be diminished or otherwise impaired by the DIP Financing. Regardless of whether the DIP Financing is approved, the Subordinated Lenders will continue to hold second position liens and will receive the same adequate protection provisions pursuant to the terms of their existing Subordinated Lenders' Stipulation. Further, they have consented to the DIP Financing and have agreed to execute an Intercreditor and Subordination Agreement.

22. The DIP Financing and the documents to be executed in connection therewith are the result of arm's length negotiations between the Debtor and the Lender. In addition, the terms and provisions of the DIP Financing are fair and reasonable. The Debtor has determined that the DIP Financing, under the terms and conditions set forth herein, is the most favorable financing available and best addresses the Debtor's postpetition financing needs.

23. Having determined that financing was available only under section 364(d) of the Bankruptcy Code, the Debtor negotiated the DIP Financing pursuant to its business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g.*, *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *Bray v. Shenandoah Fed. Sav.& Loan Ass'n*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Department Stores*, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that

8

permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or their purpose is not so much to benefit the estate as it is to benefit parties in interest.").

24. The DIP Financing is not out-of-line with current debtor-in-possession financings in these difficult economic times. As credit has contracted even in the non-insolvency world, the number of lenders in the insolvency world has decreased and the terms of any such lending has become more demanding. It is particularly difficult to obtain unsecured credit or subordinated secured credit on undeveloped real estate. Recent cases in which debtor-in-possession lending included lien priming or other "extraordinary relief" include the bankruptcy cases of Circuit City Stores, Inc., Case No. 08-35653 (E.D. Va. Nov. 10, 2008) (roll up of prepetition debt and priming liens on all property), Pilgrim's Pride Corp., Case No. 08-45664 (Bankr. N.D. Tex. Dec. 30, 2008) (prepetition and postpetition loans borrowing base and priming lien on all postpetition property), Lyondell Chemical Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 8, 2009) (priming lien on all assets), and Olde Prairie Block Owner, LLC, Case No. 10-B-22668 (Bankr. N.D. Ill. Mar. 11, 2011) (priming lien).

25. The Debtor has determined that the DIP Financing is necessary for the Debtor to operate its business and for the Debtor's successful reorganization. The DIP Financing will finance the necessary costs of development and construction of Sonoma Section 4A. The DIP Financing will therefore enable the Debtor to maintain its revenue stream and to maximize the value of its business and property. Accordingly, the Debtor believes that the DIP Financing is in the best interests of the Debtor's estate and creditors and will allow the Debtor to maximize the value of its assets for all creditors.

**NOTICE**

26. The Debtor will provide notice of this Financing Motion and the hearing thereon upon: (i) the office of the United States Trustee for the Southern District of Indiana; (ii) the Internal Revenue Service; (iii) the Debtor's twenty (20) largest general unsecured creditors; (iv) any party who has filed an appearance and served same on the Debtor prior to service; (v) any party with an interest in the DIP Collateral, including without limitation the Subordinated Lenders, and (vi) any other party to whom the Court directs that notice shall be given.

**NO PRIOR REQUEST**

27. No previous request for the relief requested herein has been made to the Court in the Chapter 11 Case.

WHEREFORE, the Debtor respectfully requests that the Court (i) authorize the Debtor to obtain postpetition financing from the Lender pursuant to the terms and conditions set forth herein, in the Financing Order, and in the Loan Documents, (ii) enter the Financing Order substantially in the form and substance of Exhibit A attached hereto, and (iii) grant such other relief as is just and proper.

          Respectfully submitted,

          BAKER & DANIELS LLP

          By: /s/ Jay Jaffe

Jay Jaffe (#5037-98)  
Jennifer A. Pearcy (#27460-29)  
600 E. 96th Street, Suite 600  
Indianapolis, IN 46240  
Telephone: (317) 569-4687  
Facsimile: (317) 569-4800  
jay.jaffe@bakerd.com  
jennifer.pearcy@bakerd.com  

*Counsel for the Debtors and Debtors-in-Possession*

Kayla D. Britton (#29177-06)  
300 N. Meridian Street, Suite 2700  
Indianapolis, IN 46204  
Telephone: (317) 237-0300  
Facsimile: (317) 237-1000  
kayla.britton@bakerd.com  

## CERTIFICATE OF SERVICE

      I hereby certify that on September 15, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| Kayla D. Britton<br>kayla.britton@bakerd.com | Brandt N. Hardy<br>bhardy@plunkettcooney.com | Jay Jaffe<br>jay.jaffe@bakerd.com |
| Alan K. Mills<br>alan.mills@btlaw.com | Shiv Ghuman O'Neill<br>shiv.oneill@bakerd.com | Mark R. Owens<br>mowens@btlaw.com |
| Jennifer A. Pearcy<br>jennifer.pearcy@bakerd.com | U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Charles R. Wharton<br>charles.r.wharton@usdoj.gov |
| Howard Russell Cohen<br>hcohen@fbtlaw.com | Henry A. Efroymson<br>henry.efroymson@icemiller.com | Kevin Alonzo Morrissey<br>kmorrissey@lewis-kappes.com |
| John R. Humphrey<br>jhumphrey@taftlaw.com | David J. Jurkiewicz<br>DJurkiewicz@boselaw.com | Elliott D. Levin<br>edl@rubin-levin.net |
| George W. Hopper<br>ghopper@hopperblackwell.com | David M Bullington<br>dbullington@hopperblackwell.com | Jeremy Daniel Schreiber<br>jschreib@chapman.com |
| Mark Douglas Rasmussen<br>rasmusse@chapman.com | Nick J Cirignano<br>ncirignano@zsws.com | James S. Kowalik<br>jsk@hostetler-kowalik.com |
| Thomas B. Allington<br>tallington@rubin-levin.net | Roberto A Ramirez<br>roberto.ramirez@icemiller.com | James M. Matthews<br>jmatthews@fbtlaw.com |

11

BDDB01 6801022v3

I further certify that on September 15, 2011, a copy of the foregoing pleading was mailed by first-class U.S. Mail, postage prepaid and properly addressed, to the following:

| | | |
|---|---|---|
| Duke Construction Limited Partnership<br>600 E. 96th Street, Suite 100<br>Indianapolis, IN 46240 | Star Financial Bank<br>3610 River Crossing Parkway<br>Indianapolis, IN 46240 | Bond Safeguard Insurance Company<br>c/o HUB International Scheers<br>601 Oakmont Lane, Suite 400<br>Westmont, IL 60559 |
| Pulte Homes of Indiana, LLC<br>11590 N. Meridian St., Ste 530<br>Carmel, IN 46032 | First Merchants Bank, N.A.<br>10333 N. Meridian, Suite 350<br>Indianapolis, IN 46290 | Northern Trust<br>50 South LaSalle Street<br>Chicago, IL 60675 |
| Palmer Properties, LLC<br>2929 S. Holt Rd.<br>Indianapolis, IN 46241 | KB Homes Indiana, Inc.<br>10990 Wilshire Blvd., Suite 700<br>Los Angeles, CA 90024 | James J. Nelson and Jane A. Nelson<br>4861 Keswick Way<br>Naples, FL 34105 |
| Hamilton County Treasurer<br>33 N. 9th Street, Suite 112<br>Noblesville, IN 46060 | Hancock County Treasurer<br>111 American Legion Pl., Suite 205<br>Greenfield, IN 46140-2371 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101-7346 |
| RH of Indiana, L.P.<br>9025 N. River Rd., Suite 100<br>Indianapolis, IN 46240 | M/I Homes of Indiana, L.P.<br>8500 Keystone Crossing, Suite 190<br>Indianapolis, IN 46240 | Long Ridge Estates Homeowners Association, Inc.<br>9757 Westpoint Dr., Suite 600<br>Indianapolis, IN 46256 |
| Heather Knoll Homeowners Association, Inc.<br>9757 Westpoint Dr., Suite 600<br>Indianapolis, IN 46256 | City of Carmel<br>One Civic Center<br>Carmel, IN 46032 | Alan J. Dansker<br>Bingham McHale LLP<br>2700 Market Tower<br>10 West Market Street<br>Indianapolis, IN 46204 |
| Kristin E. Richner<br>Squire, Sanders & Dempsey (US) LLP<br>41 South High Street, Suite 2000<br>Columbus, OH 43215 | | |

/s/ Jay Jaffe

BDDB01 6801022v3