SO ORDERED: October 07, 2011.



**Basil H. Lorch III
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PLATINUM PROPERTIES, LLC, et al.,[1] | ) | Case No. 11-05140 |
| | ) | |
| Debtors. | ) | JOINTLY ADMINISTERED |

**ORDER AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING**

This matter is before the Court on the *Motion For Order Authorizing Debtor To Obtain Postpetition Financing* (the "Financing Motion") (docket #224) of Platinum Properties, LLC (the "Debtor"), one of the debtors and debtors in possession in the above-captioned Chapter 11 case. By the Financing Motion, the Debtor seeks entry of an order authorizing the Debtor to obtain postpetition financing from the Ralph L. Wilfong, II Charitable Remainder Unitrust dated May 21, 2001 (the "Lender").

Due and appropriate notice of the Financing Motion and the hearing thereon have been served by the Debtor, whether by telephone, electronic mail, overnight delivery service, hand delivery, or by certified mail, on the following parties: (i) the office of the United States

---

[1] The Debtor entities are Platinum Properties, LLC and PPV, LLC.

BDDB01 6815022v5

Trustee for the Southern District of Indiana; (ii) the Internal Revenue Service; (iii) the Debtor's twenty (20) largest general unsecured creditors; (iv) any party who has filed an appearance and served same on the Debtor prior to service; (v) any party with an interest in the DIP Collateral[2], including without limitation the Subordinated Lenders; and (vi) any other party to whom the Court directs that notice shall be given (collectively, the "Notice Parties").  Having considered the Financing Motion, having conducted a hearing thereon and being otherwise duly advised in the premises;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   On April 25, 2011 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Court"), its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. as amended (the "Bankruptcy Code") commencing the Debtor's Chapter 11 case (the "Chapter 11 Case").

B.   The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

C.   No trustee or examiner has been appointed in the Chapter 11 Case, and no official committee of unsecured creditors in accordance with section 1102 of the Bankruptcy Code has been formed by the U.S. Trustee (a "Committee").

D.   This Court has jurisdiction to consider the Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Financing Motion.

2

E.  Sufficient and adequate notice of this Financing Order has been provided based upon (i) the notice sent to the Notice Parties and (ii) the consent by the Lender and the Subordinated Lenders to the relief sought in the Financing Motion and approved by this Financing Order; and no further notice of, or hearing on, the Financing Motion or this Financing Order is necessary or required.

F.  Contemporaneously herewith, the Debtor has filed a motion (the "Cash Use Motion") to approve a Stipulation and Agreed Entry of Platinum Properties, LLC and the Ralph L. Wilfong, II Charitable Remainder Unitrust Dated May 21, 2001 Authorizing Platinum Properties, LLC's Use of Cash Collateral and Granting Adequate Protection (the "Stipulation and Agreed Entry"), reflecting the Debtor and the Lender's agreement allowing the Debtor to use the Lender's cash collateral and providing adequate protection of the Lender's interest.

G.  The Lender is willing to provide the postpetition financing on a secured basis, as more particularly described herein.  As set forth in the Stipulation and Agreed Entry, the Debtor and the Lender have reached an agreement authorizing the Debtor's use of the Lender's cash collateral and granting adequate protection to the Lender.

H.  The Lender is willing to provide the postpetition financing and to allow the Debtor to use its cash collateral only upon the conditions contained in this Financing Order and the Stipulation and Agreed Entry.

I.  The Debtor represents, and the Court expressly finds, that the Debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a), (b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to sections 364(c)(2) and (c)(3).

3

J. The Debtor further represents, and the Court expressly finds, that the Subordinated Lenders are adequately protected. Such existing lienholders have consented to the terms and conditions set forth in this Financing Order and the Loan Documents.

K. The ability of the Debtor to continue its business and reorganize under Chapter 11 of the Bankruptcy Code depends upon the Debtor's ability to obtain financing to fund the development costs for its various projects. The Debtor represents that without the financing proposed by the Financing Motion, the Debtor will not have the funds necessary to pay the costs for development of Sonoma Section 4A. The Debtor further represents that without revenue from the sale of lots, it will be unable to pay the expenses for the continued operation of its business and the management and preservation of the Debtor's assets and property. Accordingly, the relief requested in the Financing Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management of its assets and properties, and it is in the best interests of the Debtor, its estate and its creditors.

L. The terms of the postpetition financing to be provided to the Debtor from the Lender have been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and (i) the provisions for extension of adequate protection and use of cash collateral, as provided in the Stipulation and Agreed Entry are made in good faith, and (ii) the Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

M. The Lender, with respect to its consent to provide the postpetition financing and to allow the Debtor to use its cash collateral, does not control or otherwise direct the operations of the Debtor.

N. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein and the entry of this Financing Order.

BDDB01 6815022v5

O. No party appearing in the Chapter 11 Case has filed or made an objection to the relief sought in the Financing Motion and the entry of this Financing Order, and to the extent any objections were made (and not withdrawn prior to the entry of this Financing Order), such objections are hereby overruled.

Based upon the foregoing, and after due deliberation and a hearing, the Court now finds that good and sufficient cause exists for granting the relief sought in the Financing Motion. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1. **Motion Granted**. The Financing Motion is granted and approved. The Debtor is hereby authorized and empowered (a) to borrow and obtain the financial and credit accommodations from the Lender, pursuant to the terms and conditions of the Loan Documents, as defined in the Financing Motion, and in accordance with the terms and conditions of this Financing Order, (b) to execute, deliver, perform, and comply with all of the terms and conditions of the Loan Documents and this Financing Order, and (c) to use the Lender's cash collateral and to grant the Lender adequate protection in accordance with the provisions of the Stipulation and Agreed Entry. Borrowings pursuant to this Financing Order will constitute valid, binding, enforceable and non-avoidable obligations of the Debtor for all purposes during the Debtor's Chapter 11 Case, any subsequently converted case of the Debtor under Chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of the Chapter 11 Case.

2. **"DIP Liens."** Pursuant to section 364(d) of the Bankruptcy Code, to secure the prompt payment and performance of the Debtor's obligations under the Loan Documents and this Financing Order (the "DIP Obligations"), the Debtor is hereby authorized to grant to the Lender valid, binding, enforceable and perfected liens and security interests (the

"DIP Liens") in the real estate comprising Sonoma Section 4A, whether such property was acquired by the Debtor before or after the Petition Date, and the proceeds thereof (the "DIP Collateral").  The DIP Liens granted hereunder shall be first priority, senior liens.  Bank of America, NA ("BOA"), the existing first priority, senior lienholder, shall be paid its agreed upon release price for the lots in Sonoma Section 4A, (as more specifically described in Exhibit A attached hereto and incorporated herein by reference as if fully set forth at length) at closing, at which time BOA will release its lien on the lots in Sonoma Section 4A described in Exhibit A. MK Investment Group, LLC and the Christel DeHaan Revocable Trust (the "Subordinated Lenders") shall subordinate their liens to the DIP Liens.  The DIP Collateral shall not be: (i) subject to any lien that is avoided and preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code, or (ii) subordinated to or made pari passu with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  No claim or lien having priority superior to or pari passu with the DIP Liens granted by this Financing Order shall be granted or allowed, until the indefeasible payment in full, in cash and satisfaction, of the DIP Obligations.

       3.    **Modification of the Automatic Stay and Lien Perfection.**  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (a) the Debtor to implement the terms of the Loan Documents and this Financing Order and (b) the Debtor to create, and the Lender to perfect, any and all liens and security interests granted to them hereunder; provided, however, this Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the DIP Collateral granted pursuant to this Financing Order and/or the Loan Documents, without the necessity of (a) filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise be required

under federal or state law in any jurisdiction (collectively, the "Lien Recording Documents"), (b) taking possession of the DIP Collateral or evidence thereof or (c) taking any other action to validate or perfect the liens and security interests granted in this Financing Order and/or the Loan Documents. If the Lender shall, in its discretion, elect for any reason to file any such Lien Recording Documents with respect to such liens and security interests, the Debtor is authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the Lender's request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the date of the execution of the Loan Documents. The Lender may, in its discretion, file a certified copy of this Financing Order in any filing or recording office in any county or other jurisdiction in which the Debtor has an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Financing Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided that if the Lender takes steps to perfect its liens and security interests under otherwise applicable state law, it does so without waiving the benefits of this provision of this Financing Order). In the event that any Lien Recording Document which the Lender elects to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the Lender's liens upon and security interests in the DIP Collateral or any of the Lender's claims, rights, priorities and/or protections afforded under this Financing Order

7

and/or the Loan Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the Lender's liens and security interests in the DIP Collateral or its claims, rights, priorities and/or protections granted under this Financing Order and/or the Loan Documents.

In addition to the other rights and remedies provided to the Lender pursuant to this Financing Order and the Loan Documents, upon the occurrence of an Event of Default (as defined herein) and the filing in this Court of an affidavit by a duly authorized representative of the Lender specifying the nature of such Event of Default, and request by the Lender for relief under the terms hereof, the Lender shall be entitled to an expedited hearing before this Court seeking the termination of the automatic stay under section 362(a) of the Bankruptcy Code with respect to the Lender as to the DIP Collateral, and the Lender may pursue all rights and remedies available to it as a secured creditor with respect to the DIP Collateral under this Financing Order and the Loan Documents and may otherwise pursue all rights and remedies available to it under non-bankruptcy law.

4. **Use of Cash Collateral and Loan Proceeds.** Subject to the limitations applicable in the Loan Documents, the Debtor shall use the proceeds made or arranged for by the Lender pursuant to the Loan Documents and this Financing Order to fund the development and constructions costs for Sonoma Section 4A. The Debtor is responsible for the aggregate sum of fees and expenses of the Lender charged to the Debtor in connection with negotiating, documenting and obtaining approval of the DIP Financing up to and through the date of entry of this Financing Order. The Lender shall provide the Debtor and all counsel of record in the Chapter 11 Case with reasonable detail of the expenses (including attorneys' fees) charged to the Debtor. Parties in interest shall have ten calendar days to object to any such expenses, and if an

objection is raised, the Court shall determine the reasonableness of the expense and the Debtor shall only be obligated to pay the amount as determined by the Court.

The Debtor's cash and cash equivalents that constitute proceeds of the sale of the DIP Collateral securing the Debtor's obligations to the Lender constitute "cash collateral" (as that term is defined in section 363(a) of the Bankruptcy Code) (the "<u>Wilfong Cash Collateral</u>"). Pursuant to the terms of the Stipulation and Agreed Entry, the Debtor is authorized to use the Wilfong Cash Collateral to repay the Wilfong Loan (as defined in the Stipulation and Agreed Entry) and for ordinary and necessary operating expenses, including without limitation, the reasonable and customary expenses normally identified on a HUD-1 Settlement Statement, payroll expenses, utility services, payroll taxes, insurance, supplies and equipment, vendor and supplier services, and other expenditures as are necessary for operating the Debtor's business, including Sonoma Section 4A and maintaining the Wilfong Cash Collateral.

5.  **Accrual of Interest**.  The Lender is authorized to accrue interest on the outstanding balance of the obligations due pursuant to the Loan Documents and to apply proceeds from the sale of lots against interest as set forth in the Loan Documents and in the Stipulation and Agreed Entry.

6.  **Nullifying Prepetition Restrictions on Postpetition Lien Grants**. Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which the Debtor is a party or under which the Debtor is obligated, any provision that restricts, limits or impairs in any way the Debtor's ability or right to grant liens or security interests upon the DIP Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which the Debtor is a party) under the Loan Documents or this Financing Order or otherwise enter into

9

and comply with all of the terms, conditions and provisions thereof shall not be effective and shall be unenforceable against the Debtor and the Lender to the maximum extent permitted under the Bankruptcy Code and other applicable law, but only with respect to the entry of this Financing Order granting such postpetition financing, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Lender pursuant to this Financing Order, the Loan Documents or any of the rights of the Lender hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law.

7.  **Remedies upon Occurrence of Event of Default.**  In the event of any of the following:  (a) the failure of the Debtor to perform in any material respect any of its obligations pursuant to this Financing Order or (b) the occurrence and continuation of any "Event of Default" as defined under the Loan Documents (each of the foregoing being referred to in this Financing Order, individually, as an "Event of Default" and collectively, as the "Events of Default"); the Lender shall be permitted to exercise any remedies contained in the Loan Documents only after obtaining an order from the Court allowing such exercise of remedies.  Nothing contained in this Financing Order or otherwise shall be construed to obligate the Lender in any way to lend or advance any additional funds to the Debtor or provide other financial accommodations to Debtor upon or after the occurrence of an Event of Default.  The Lender may not exercise any remedies against any DIP Collateral without further order of the Court.

8.  **Binding Effect of this Financing Order and the Loan Documents.**  The provisions of this Financing Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Debtor's Chapter 11 Case to a Chapter 7 case, dismissing the Debtor's bankruptcy case (in the case of any such dismissal, to the maximum

10

extent permitted under the Bankruptcy Code and other applicable law) or any order which may be entered confirming or consummating any plan of reorganization of the Debtor; and the terms and provisions of this Financing Order as well as the priorities in payment, liens, and security interests granted pursuant to this Financing Order and/or the Loan Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Financing Order until all DIP Obligations are indefeasibly paid and satisfied in full; provided that all obligations and duties of the Lender hereunder, under the Loan Documents or otherwise with respect to any future loans, shall terminate immediately upon the earlier of the date of any Event of Default or the date that a plan of reorganization of the Debtor becomes effective unless the Lender consistent with provisions of the Loan Documents has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the Lender.

The provisions of this Financing Order and the Loan Documents shall be binding upon all parties-in-interest in these cases, including, without limitation, the Debtor, the Lender and a Committee (if appointed), and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of Debtor's estate), and shall inure to the benefit of the Debtor, the Lender and a Committee (if appointed), and their respective successors and assigns; provided, however, that the Lender shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for the Debtor's estates.

11

9. **Good Faith.** The terms of the financing arrangements between the Debtor and the Lender have been negotiated in good faith between the Debtor and the Lender and any loans which are made or caused to be made to the Debtor by the Lender pursuant to the Loan Documents under this Financing Order are deemed to have been made and provided in good faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Financing Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. By taking actions pursuant to this Financing Order, the Lender shall not (i) be deemed to be in control of the operations of the estate, or (ii) be deemed to be acting as a "responsible person" with respect to the operation or management of the estate.

10. **No Modification or Stay of this Financing Order.** If any or all of the provisions of this Financing Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Lender prior to the effective date of such modification, vacation or stay or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the Loan Documents, as applicable. Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by the Debtor to the Lender prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Financing Order; and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities. No indebtedness, obligation or liability owed by the Debtor to the Lender under this Financing Order or the Loan Documents, in each case, prior to the effective date of any modification, vacation or stay of this Financing Order can, as a result of

any subsequent order in the Chapter 11 Case, or in any superseding case, be subordinated, lose its lien priority, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Financing Order and/or the Loan Documents.

11. **Conflicting Provisions**.  Unless otherwise provided in this Financing Order, to the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this Financing Order, the terms and conditions of this Financing Order shall control.

12. **Immediate Effect of Order**.  The terms and conditions of this Financing Order shall be: (a) immediately enforceable pursuant to Bankruptcy Rule 8005, and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Bankruptcy Rule 8005, (2) hearing upon notice to the Debtor and the Lender, and (3) entry of an order granting such stay.

###

# EXHIBIT A

(proposed Maple Village Section 4A)

Part of the Northwest Quarter of Section 3, Township 18 North, Range 3 East, Hamilton County, Indiana, more particularly described as follows:

Commencing at the Northeast corner of said Quarter Section being marked by a Harrison Monument; thence South 00 degrees 08 minutes 11 seconds West along the East line of said Quarter Section, 1,398.76 feet to the Point of Beginning of this description; thence continuing South 00 degrees 08 minutes 11 seconds West along said East line 300.00 feet to the North line of Maple Village, Section 5 recorded as Instrument No. 201005341 in the Office of the Recorder of Hamilton County, Indiana; the next five (5) calls being on and along said North line; 1) North 89 degrees 52 minutes 08 seconds West 180.01 feet; 2) South 00 degrees 07 minutes 52 seconds West 4.61 feet; 3) North 89 degrees 52 minutes 08 seconds West 280.00 feet; 4) South 81 degrees 32 minutes 51 seconds West 53.60 feet; 5) North 89 degrees 52 minutes 08 seconds West 80.50 feet to the East line of Maple Village, Section 2, recorded as Instrument No. 2007054895 in said Recorder's Office; thence North 00 degrees 07 minutes 52 seconds East along said East line a distance of 8.00 feet to the Southeast corner of Maple Village, Section 3, recorded as Instrument No. 2008036263 in said Recorder's Office; the next six (6) calls being on and along the East lines of said Maple Village, Section 3; 1) North 00 degrees 07 minutes 52 seconds East 192.85 feet; 2) North 89 degrees 52 minutes 08 seconds West 110.91 feet; 3) South 47 degrees 00 minutes 26 seconds West 10.00 feet to a point on a curve concave southwesterly, the radius point of said curve being South 47 degrees 00 minutes 26 seconds West 50.00 feet from said point; 4) northwesterly along said curve 28.79 feet to the point of tangency of said curve, said point being North 14 degrees 01 minutes 04 seconds East 50.00 feet from the radius point of said curve; 5) North 00 degrees 07 minutes 52 seconds East 191.46 feet to a point on a curve northwesterly, the radius point of said curve being North 00 degrees 07 minutes 52 seconds East 50.00 feet from said point; 6) northeasterly along said curve 81.14 feet to the point of tangency of said curve, said point being North 87 degrees 09 minutes 16 seconds East 50.00 feet from the radius point of said curve; thence South 89 degrees 52 minutes 08 seconds East 160.63 feet to a point on a curve concave easterly, the radius point of said curve being South 86 degrees 53 minutes 32 seconds East 50.00 feet from said point; thence southerly along said curve 21.65 feet to the point of tangency of said curve, said point being south 68 degrees 17 minutes 35 seconds West 50.00 feet from the radius point of said curve; thence South 68 degrees 17 minutes 36 seconds West 38.34 feet; thence South 00 degrees 07 minutes 52 seconds West 112.14 feet; thence South 89 degrees 52 minutes 08 seconds East 385.00 feet; thence North 00 degrees 07 minutes 52 seconds East 14.61 feet; thence South 89 degrees 52 minutes 08 seconds East 50.00 feet; thence continuing South 89 degrees 52 minutes 08 seconds East along said line, a distance of 130.04 feet to the place of beginning, containing 4.931 acres, more or less.

BDDB01 6815022v5