Exhibit A

Case 11-05140-BHL-11    Doc 248-1    Filed 10/07/11    EOD 10/07/11 16:40:16    Pg 1 of 18

# SETTLEMENT AGREEMENT

by and between

EAST CARMEL, LLC

as

BORROWER

STEVEN R. EDWARDS, PAUL F. RIOUX, JR., KENNETH R. BRASSEUR AND PLATINUM PROPERTIES, LLC

as

GUARANTORS

and

FALCON NEST, LLC

as

LENDER

## TABLE OF CONTENTS

                                                               **Page**

**THE PROJECT** ............................................................................................................................2

**THE GUARANTY** .......................................................................................................................9

**OPERATIONS AND ACCESS TO BOOKS AND RECORDS** ................................................9

**EXPENSES** ................................................................................................................................10

**REPRESENTATIONS AND WARRANTIES OF LENDER** ...................................................10

**TERMINATION** ........................................................................................................................11

**ASSIGNMENT** ..........................................................................................................................11

**RELIEF FROM BANKRUPTCY** .............................................................................................11

**BANKRUPTCY COURT APPROVAL; EFFECTIVE DATE** .................................................11

**MISCELLANEOUS** ..................................................................................................................12

## **LIST OF EXHIBITS**

Exhibit A   -   Legal Description of the Project

Exhibit B   -   Loan Documents

Exhibit C        Property Management Agreement

Exhibit D        Schedule of Leases, Project Deposit Accounts and Project Receivables

Exhibit E   -   Service Contracts

Exhibit F   -   Borrower and Guarantors Release of Claims

Exhibit G   -   Assignment of Declarants Rights

Exhibit H        Assignment of Project Property

Exhibit I        Guaranty of Bond Obligations

Exhibit J        Development Services Agreement

Exhibit K   -   Release of Guaranty

# SETTLEMENT AGREEMENT

**THIS AGREEMENT** (this "**Agreement**") is executed as of the _____ day of September, 2011, by and between **EAST CARMEL, LLC**, an Indiana limited liability company ("**Borrower**"), with an address at 9757 Westpoint Drive, Suite 600, Indianapolis, Indiana 46256, **PLATINUM PROPERTIES, LLC** ("**Platinum**"), **STEVEN R. EDWARDS, PAUL F. RIOUX, JR.,** and **KENNETH R. BRASSEUR** (collectively with Platinum, "**Guarantor**"), and **FALCON NEST, LLC** ("**Lender**"), with an address at 1356 Beverly Road, Suite 300, McLean, Virginia 22101.

## WITNESSETH THAT:

A.  Borrower is the fee owner of the real property located at 146th Street and River Road, Carmel, Hamilton County, Indiana, as more fully described on the attached **Exhibit A** (the "**Land**"), the residential development and other improvements located on the Land commonly known as Legacy Development, and other appurtenant rights, privileges, easements and amenities located on or appertaining to the Land (all of the foregoing are sometimes collectively referred to as the "**Project**").

B.  Borrower, as maker, executed that certain Replacement Promissory Note dated September 7, 2007, in favor of LaSalle Bank National Association, as agent, in the amount of $21,262,500.00 ("**Note A**"), and that certain Promissory Note dated September 2, 2007, in favor of Star Financial Bank in the amount of $9,112,500.00 ("**Note B**"), to evidence loans in the total amount of $30,375,000.00 ("**Loan**"). Note A was assigned by LaSalle Bank National Association to Star Financial Bank on or about April 19, 2011. Note A and Note B were assigned by Star Financial Bank to Falcon Nest, LLC on or about June 30, 2011. (Note A and Note B are collectively referred to herein as the "**Notes**".) The balance due under the Notes as of June 30, 2011 was $18,995,732 principal, $2,257,846 interest, plus late charges, costs and attorneys fees.

C.  As security for payment of the Notes, Borrower executed and delivered for the benefit of Lender, among other things, the loan documents set forth on the attached **Exhibit B** (with the Notes, collectively, the "**Loan Documents**").

D.  Lender is the current holder of the Notes and the other Loan Documents.

E.  Steven R. Edwards, Paul F. Rioux, Jr., Kenneth R. Brasseur and Platinum Properties, LLC guaranteed Borrower's payment and performance of the Loan, pursuant to those certain Guaranty of Payment and Completion guarantys dated July 19, 2007 ("**Guaranty**").

F.  Borrower failed to make the first cumulative principal reduction due on the Notes on July 31, 2009, and failed to make the second cumulative principal reduction due on the Notes on July 31, 2010. The Notes have now matured and are due and payable in full.

G.  Platinum filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 25, 2011, which case (the "Case") is pending as Case No. 11-05140 in

the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Bankruptcy Court").

H.  Borrower, Guarantor and Lender desire to resolve all rights, duties and obligations relating to the Loan and the Loan Documents by providing for the foreclosure by Lender against the Project, and certain other agreements of Borrower, as set forth herein, all under the terms and conditions hereinafter set forth.

NOW, THEREFORE, for good and valuable consideration received to the full satisfaction of each of them, the parties agree as follows:

1. **THE PROJECT**.

   a. **Foreclosure; Appointment of Receiver**.  Borrower and Guarantor acknowledge that Lender has instituted an action to foreclose its Mortgage and security interests with respect to the Project.  The foreclosure action is pending in the Hamilton Superior Court in the action entitled Falcon Nest, LLC vs. East Carmel, LLC, et al., under Cause No. 29D01-1009-PL-1238 ("**Foreclosure Action**").  In connection with the Foreclosure Action, Borrower and Guarantor acknowledge and agree that they do not have any defenses to the Foreclosure Action; they will cooperate with Lender in connection with the Foreclosure Action; and, they do hereby withdraw and rescind all discovery requests pending in the Foreclosure Action.  Borrower and Guarantor agree that if requested by Lender, they consent to (i) the appointment of a receiver over the Project, and (ii) the entry of a judgment in the Foreclosure Action.  Borrower and Guarantor will approve and consent to a reasonable form of foreclosure judgment as requested by Lender provided that it is consistent with the terms of this Agreement and does not create new liability for Borrower or Guarantor.  Borrower and Guarantor agree that they will consent to any reasonable motion for summary judgment that Lender has filed in connection with such Foreclosure Action.  The foreclosure judgment shall not include the granting of any judgment against Guarantor; provided, however, subject to the terms of this Agreement, Lender retains its rights to seek judgment against Guarantor.

   b. **Lender Option for Deed-in-Lieu of Foreclosure**.  Borrower and Guarantor agree that, if Lender requests that Borrower grant to Lender a deed in lieu of foreclosure ("**DIL**") with respect to the Project, Borrower will grant to Lender's designee, Falcon Nest II, LLC ("**Falcon Nest**") a DIL for the Project provided that it is consistent with the terms of this Agreement and does not create new liability for Borrower or Guarantor.  Lender acknowledges that Duke Construction Limited Partnership ("**Duke Construction**") has a mortgage lien on the Project, and that Lender will be responsible for obtaining a release of the Duke Construction lien if Lender elects to pursue a DIL.

   c. **Property Management Agreement**.  Borrower shall engage Zumot Real Estate Management, Inc., or such other management company designated by Lender, ("**Manager**") as the property manager for the Project. Borrower and Manager shall execute a property management agreement in form and substance the same as **Exhibit C**, which shall provide, among other things, that Manager shall have the sole right to manage the Project and that all revenues generated by the Project over and above the Project's reasonable operating expenses shall be paid to Lender.  Borrower agrees that Lender shall not be obligated to advance any funds

to operate the Project or to pay any operating costs. Lender and Manager agree that Borrower and Guarantor shall have no liability or obligation to pay for any goods, services or other expense delivered or created at the direction of Manager. Lender and Manager agree to indemnify and hold Borrower and Guarantor harmless from such expenses or liabilities. The property management agreement shall remain in full force and effect until Lender or a bona fide third party purchaser takes title to the Project. Borrower shall not amend the property management agreement without the consent of Lender. The property management agreement will acknowledge that Lender has exercised its assignment of rents; that only current operating expenses will be paid; and that all income shall be disbursed to Lender.

        d.      **Borrower and Guarantor Deliveries With Respect to the Project**. Borrower and Guarantor agree to deliver or cause to be assigned and delivered to Lender or Falcon Nest as directed by Lender (together, the "Assignee") the following (collectively with the Project referred to as the "**Project Property**"):

        i.      All leases, rents and profits of the Project (collectively, the "**Rents and Leases**"; and the existing leases from Borrower to tenants of units located in the Project being the "**Leases**"), including, without limitation, all security deposits and pre-paid rents and all income, payments (whether due as of the Effective Date or made or due on or after the Effective Date), receivables, revenues, profits or other value generated by or through any lease of the Project, and all lease guaranties. The Leases are listed in the attached **Exhibit D**. To the extent any Service Contract has been prepaid or a deposit exists thereunder, Assignee shall receive the benefit thereof and shall not be required to reimburse Borrower for any such prepayment or deposit. Any uncollected receivables of Rent or other income under any Lease shall belong to Assignee or any receiver appointed for the Project. In the event any Rents or other income are received by Borrower, such Rents or other income shall be immediately delivered to Assignee or any receiver appointed for the Project. Except as provided in paragraph 1.c. of this Agreement, Assignee is not assuming any obligation for the payment of any accounts payable or other expenses of the Project.

        ii.      All of Borrower's right in any escrow or reserve deposits currently held by Lender or for the benefit of Lender and all of Borrower's right in any operating accounts and/or cash management accounts for the Project in connection with the Loan ("**Project Deposit Accounts**"). The Project Deposit Accounts are listed in the attached **Exhibit D**.

        iii.      All of Borrower's assignable right under and to the contracts and agreements listed in the attached **Exhibit E** ("**Service Contracts**").

        iv.      All of Borrower's rights in any uncollected receivables pertaining to the Project ("**Project Receivables**"), including, but not limited to, any and all receivables, insurance proceeds or claims to insurance proceeds, awards and other payments in connection with any litigation with respect to the Project, any notes or accounts from the condominium association and all tax and utility refunds and rebates irrespective of the time period to which they relate. The Project Receivables are listed in the attached **Exhibit D**.

    v.    All of Borrower's assignable right, title and interest in and to all intangible property owned by Borrower in connection with its development, use and operation of the Project ("**Intangible Property**"), including, without limitation, plans and specifications, surveys, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, insurance policies (except as provided below), trademarks and the names of the Project, if any, but expressly excluding bank records, tax records, and computer programs or other software licensed to Borrower or Guarantor. Possession of all of the Intangible Property, including any tangible items or electronically stored items, shall be delivered to Assignee upon its request. Assignee may request delivery of possession of the Intangible Property at any time; and the fact that the Borrower shall remain in possession of any of the Intangible Property following the execution of this Agreement shall not prevent Assignee from requesting possession of the Intangible Property at any time.

    vi.    All keys and security cards and codes and other access and alarm codes and combinations to the Project in Borrower's possession.

    vii.    Any funds held by Borrower in any Project Deposit Accounts.

    viii.    A release of claims against Lender relating to the Project and the Loan in the form attached hereto as **Exhibit F**.

    ix.    Copies of any future tax bills to Assignee, but Assignee shall not be obligated to pay any taxes as shown on such bills.

    x.    Copies of all Leases, Service Contracts and all Intangible Property.

    xi.    All furniture, fixtures, equipment, and other personal property owned by Borrower and located in or upon or used in connection with the Project which is subject to Lender's mortgage lien and security interests under the Loan Documents ("**Personal Property**").

    xii.    Any prepaid amounts or deposits relating to any Service Contracts, and any uncollected receivables of Rent or other income under any Lease. In the event any Rents or other income are received by Borrower, such Rents or other income shall be immediately delivered to Assignee or any receiver appointed for the Project. Assignee is not assuming any obligation for the payment of any accounts payable or other expenses of the Project.

    xiii.    To the extent required by Assignee, a written assignment, in form and substance acceptable to Assignee, and all of Borrower's, Guarantor's, Borrower's or Guarantor's affiliates' rights as a declarant ("**Declarant Rights**") under any declaration of covenants, conditions or restrictions, or declaration of condominium or any such similar document, however denominated that has any effect whatsoever on the Project, including, without limitation, the instruments described on **Exhibit G** ("**Declarations**"). The assignment shall be deemed irrevocable but not accepted by Assignee until recorded by Assignee.

xiv. To the extent requested by Assignee, an Assignment of all of Borrower's or Borrower's affiliates' rights with respect to any condominium or owner's association having any jurisdiction over or rights with respect to the Project, including resignations of officers and board members. Also, all records in Borrower's or Borrower's affiliates' possession relating to any associations.

xv. Borrower and Guarantor shall execute in favor of Assignee an Assignment in form and substances the same as **Exhibit H** to evidence and document the assignment of the Project Property to Assignee.

e. **Lender Deliveries With Respect To Surety Bonds**. Attached as Schedule 1.e. is a list of all subdivision and maintenance bonds (the "**Surety Bonds**") relating to the Project and issued by Borrower or Platinum, itemizing the amount of each Surety Bond, and the date through which the premium is paid. At closing, Assignee shall either (a) provide replacement Surety Bonds or letter of credit required for the Project in form and substance sufficient to permit Borrower and Guarantor to obtain the return and cancelation of the Surety Bonds, or (b)(i) pay directly to Borrower's bonding company 100% of the actual annual premium to bring current and subsequently renew all Surety Bonds, and (ii) indemnify, defend (by counsel reasonably acceptable to Borrower and Guarantor) and hold Borrower and Guarantor harmless from any and all costs, losses, damages, injuries, claims, actions, liens and expenses of any kind or nature incurred by or asserted against Borrower or Guarantor pursuant to or as a result of any demand or claim made upon or against any one or more of the Surety Bonds. If Section 1.e(b) is applicable, Falcon Nest shall unconditionally guarantee the obligations under Section 1.e(b)(ii) above by the execution of a Guaranty in the form attached as **Exhibit I**.

f. **Representations as to the Project**. Borrower and Guarantor represent and warrant to Assignee that:

i. Borrower is a limited liability company in good standing under the laws of the State of Indiana.

ii. Borrower and Guarantor have received no written notices or citations for and have no knowledge of the violation of any zoning, building or other law, ordinance, regulation or directive of any governmental authority or authorities having jurisdiction relating to the Project Property, or any part or parts thereof, and Borrower and Guarantor have received no written notices from any agent or employee of the existence of any facts or conditions which may result in the issuance of any such notice or citation.

iii. Borrower and Guarantor have received no written notice and have no knowledge of any litigation, proceeding, condemnation, or action pending or threatened against or relating to the Project which might adversely affect Assignee or which questions the validity of this Agreement or any action taken or to be taken by Borrower or Guarantor pursuant hereto, other than as described in subparagraph (iv) below.

iv. To Borrower's and Guarantor's knowledge, except for purchasers of parcels and lots, utility and other easements of record, and a contested claim of the Indianapolis Water Company to a water main, Borrower is the only party having a

current right or possession in and to the Project Property. Except for lot or parcel sale agreements, Borrower has not entered into any leases, contracts or agreements affecting ownership or possession of the Project Property.

    v.    Borrower has not instituted any action contesting, nor does Borrower have any actual written notice or knowledge of any action being instituted against Borrower with respect to, the real estate taxes or assessments assessed against the Project Property.

    vi.    Borrower does not have any active contracts for service, labor, maintenance, repair and operation of the Project Property except for the Service Contracts.

    vii.    Borrower has not received any written notices from any of its insurer(s) to the effect that the Project Property (or any portion of it) is not insured as required hereby.

    viii.    Borrower has not sold, assigned, conveyed, transferred, mortgaged, hypothecated, pledged or encumbered the Project Property, or any portion thereof, except for the Loan Documents and a mortgage lien in favor of Duke Construction.

    ix.    Neither Borrower nor any of the Guarantor have pledged any interests in Borrower to any third party as collateral or security for any obligation of Borrower or Guarantor or any members of Borrower or Guarantor. To Borrower's and Guarantor's actual knowledge, other than as may be provided in the agreements and documents listed in the preceding sentence, and other than with respect to the Duke Construction lien in connection with a DIL, no consent of any lender of Borrower or any of the Guarantor or any member or any third party is required in order for Borrower or Guarantor to enter into or fulfill its obligations under this Agreement that will not be obtained promptly.

    x.    To Borrower's knowledge, no court having jurisdiction has entered a decree or order for relief with respect to Borrower in any involuntary case under any bankruptcy, insolvency, or similar law or appointed a receiver, liquidator, assignor, custodian, trustee or similar official for Borrower, or ordered the winding up or liquidation of the affairs of Borrower, nor has Borrower filed a petition for relief or commenced a voluntary case under any bankruptcy, insolvency or similar law, consented to the entry of an order for relief in an involuntary case under any such law, or consented to the appointment of, or taking of possession by, a receiver, liquidator, assignee, trustee, custodian, or similar official for Borrower, nor has Borrower made any general assignment for the benefit of creditors, nor has any order, judgment or decree been entered decreeing the dissolution of Borrower.

    xi.    To Borrower's knowledge, (1) the Project Property is not in any way contaminated with any hazardous substance; (2) the Project Property does not appear on any state or federal CERCLA (Comprehensive Environmental Responsibility, Compensation, and Liability Act or Superfund) lists; (3) there is no asbestos or PCB's on the Project Property; (4) there is no underground storage tank on the Project Property; (5) neither Borrower nor any of Borrower's employees, agents, licensees or invitees have placed or permitted the placement of any hazardous substance in, on or over the Project

Property; (6) without independent investigation, no other party has placed any hazardous substance in, on or over the Project Property; (7) the Project Property has not been used as a plant or site where hazardous substances are subjected to treatment, storage, disposal or recovery; (8) the Project Property is not subject to any federal, state or local "Superfund" lien, proceedings, claim, liability or action, or the threat or likelihood thereof, for the clean-up, removal or remediation of any such hazardous substance from the Project Property; (9) by foreclosing on the Project Property, Lender will not incur or be subjected to any liability for the clean-up, removal or remediation of any hazardous substance from the Project Property or any liability, cost or expense for the removal of any underground storage tank from the Project Property; and (10) any indemnity from Borrower under the Loan Documents with respect to any of the foregoing matters shall survive execution, delivery and performance of this Agreement.

The fact that Assignee undertakes or obtains any environmental audit or assessment of the Project Property shall not release or relieve Borrower or Guarantor of or from any of the foregoing covenants and representations. The terms "hazardous substance", "release" and "removal", as used herein, shall have the same meaning and definition as set forth in paragraphs (14), (22) and (23), respectively, of Title 42 U.S.C. § 9601; provided, however, that the term "hazardous substance" as used herein shall also include "hazardous waste" as defined in paragraph (5) of 42 U.S.C. § 6903 and any other substance or material that may be harmful to human health or the environment and "petroleum" as defined in paragraph (6) of 42 U.S.C. § 6991. The term "underground storage tank" as used herein shall have the same meaning and definition as set forth in paragraph (1) of 42 U.S.C. § 6991.

xii. Borrower has no knowledge, nor has it received any written notice of (1) any disputes concerning the location of the boundary lines on the Project Property, (2) any encroachments of improvements on the Project Property onto adjacent lands or on adjacent lands encroaching onto the Project Property or (3) other than the improvements constructed on the Land by Borrower, any new improvements on the Project Property or on adjacent lands which would be reflected by an accurate survey of the Project Property.

The representations and warranties set forth above in this Section 1.f. shall be deemed renewed by Borrower on the date of delivery of all documents and items listed in Section 1.d. of this Agreement as if made at such time and shall survive without limitation.

g. **Cooperation**. Borrower and Guarantor shall reasonably cooperate with Lender and Manager in their respective efforts to sell and manage the Project Property and conclude the Foreclosure Action as provided in this Agreement. Borrower and Guarantor shall execute such further instruments and take such further actions as are necessary and desirable to fully effectuate the terms of this Agreement. Borrower and Guarantor shall not at any time take any action, direct or indirect, which is adverse to the interests of Lender.

Borrower and Guarantor shall reasonably cooperate with Assignee in its efforts to coordinate the various associations related to the Property and agree that they will turn over the associations to the various property owners if requested by Assignee.

Borrower and Guarantor shall reasonably cooperate with Assignee and pursue the completion of the TIF financing that has been pursued by Borrower which is required for the construction of infrastructure to benefit the Project.

h. **Lender and Falcon Nest Not Liable.**

i. Borrower acknowledges and agrees that Lender, by its execution of this Agreement or by acceptance of title by Lender or Falcon Nest to all or any part of the Project Property or any of the documents or items to be delivered by Borrower to Assignee pursuant to this Agreement and by the performance of Borrower and Assignee pursuant to this Agreement, does not assume or create any obligations on the part of Assignee to third parties that have claims or liabilities of any kind whatsoever against Borrower or the Project Property that accrued prior to the date hereof or the date such documents or items were delivered. Borrower further acknowledges and agrees that Assignee is not a venturer, co-venturer, insurer, guarantor or partner of Borrower in Borrower's ownership of the Project Property at any time, including prior to the completion of a foreclosure sale or Assignee's acceptance of a DIL and that Assignee shall bear no liability whatsoever resulting from or arising out of Borrower's ownership of the Project Property prior to the completion of a foreclosure sale or Assignee's acceptance of a DIL. The provisions of this subsection shall survive the completion of a foreclosure sale or Assignee's acceptance of a DIL.

ii. Notwithstanding the execution of this Agreement by Lender or the acceptance by Assignee of the conveyance of the Project Property as herein envisioned, the Notes and Mortgage and all other Loan Documents shall remain in full force and effect after this Agreement has been executed and delivered and Borrower has delivered the items and documents it is required to deliver to Lender pursuant to the Agreement. The interest of Lender in the Project Property under any or all the conveyances provided for hereunder shall not merge with the interest of Lender in the Project Property under the Loan Documents and shall at all times remain SEPARATE and DISTINCT. The liens and security interests evidenced by the Loan Documents shall be and remain at all times valid and continuous liens and security interests on the Project Property.

i. **Separate Agreements**. At the time of the closing of this Agreement, Falcon Nest, Manager, and Platinum Properties Management Company, LLC (the "**Counterparty**") shall have entered into a Development Services Agreement in form and substance the same as **Exhibit J**, that will provide for the following fees and services:

i. Sale Fee.

(a) Term. The initial term of the sale fee shall be for a period expiring three (3) years from the Effective Date of the Development Services Agreement. The initial term may be renewed for subsequent three (3) year periods at the option of Falcon Nest.

(b) Identified Prospect. Counterparty shall submit to Falcon Nest the names of any persons with whom Counterparty conducts

1962678/Falcon-East
BDDB01 6892666v1

8

negotiations during the term, which shall be considered an Identified Prospect.

(c) <u>Sale Fee</u>.  If (i) Falcon Nest accepts an offer from an Identified Prospect for the sale of all or any portion of the Project, and (ii) the sale results in a closing, then Falcon Nest shall pay to Counterparty at the time of the closing of the sale a sale fee in an amount of 3% of the gross sale price.

ii. <u>Development Management Fee</u>.  Counterparty will provide development management services to Falcon Nest.  Counterparty shall be paid a development management fee of 7.5%.

2. **THE GUARANTY.**

a. **Release of Guaranty.**  Lender agrees that so long as Borrower and Guarantor strictly and timely comply with all of their respective obligations under this Agreement and so long as all of the representations and warranties made by Guarantor or Borrower remain true and correct (regardless of when tested) then (i) Lender shall forebear from pursuing a grant of a judgment against Guarantor in the Foreclosure Action, and (ii) at such time as Borrower conveys, transfers, or surrenders title to the Project under one or a combination of (a) Assignee taking title to the Project pursuant to a foreclosure sale or DIL or (b) a bona fide third party purchaser closing upon a purchase of the Project or some portion thereof on terms acceptable to Lender, and Counterparty executes the Development Services Agreement then Lender shall execute and deliver to Guarantor (other than Platinum) the Release of Guaranty in the form of **Exhibit K-1**.  As to Platinum, Lender shall execute and deliver to Platinum the Release of Guaranty in the form of **Exhibit K-2** when, in addition to the satisfaction of the foregoing conditions, the Approval Order (as hereinafter defined) has been entered by the Bankruptcy Court and becomes final, non-appealable and not appealed.  Until such Releases of Guaranty are executed and delivered, Guarantor's Guaranty shall remain in full force and effect.

3. **OPERATIONS AND ACCESS TO BOOKS AND RECORDS**.

Borrower and, as applicable, Guarantor shall (i) prior to turning over operation of the Project to Manager, carry on the business of the Project in the ordinary course and in a manner consistent with prior practices, (ii) not remove or permit to be removed from the Project any physical item or article defined as Personal Property hereunder; (iii) not sell, transfer, encumber, mortgage or place any lien upon the Project or in any way create or consent to the creation of any title condition affecting the Project; and (iv) keep the Project insured as required by the Loan Documents.

Borrower and Guarantor agree that Assignee and Manager, and their respective agents and representatives, including, without limitation, appraisers, engineers, asbestos inspectors and abatement technicians, photographers, design professionals, leasing and management advisers and brokers, shall have access during normal business hours, to the Project, and to all of Borrower's and Guarantor's books and records related directly thereto whether located at the Project or elsewhere in order to familiarize itself with the Project and its operations.  Assignee

shall be entitled to copy any such material. Borrower shall be entitled to retain copies of any such material at its expense.

4. **EXPENSES**.

a. The following costs and expenses of this transaction shall be chargeable to, and paid by, Borrower:

i. All of Borrower's attorneys' fees and costs arising out of and related to the closing of the transaction contemplated hereby.

b. The following costs and expenses of this transaction shall be chargeable to, and paid by Lender:

i. The cost of any title commitment, owner's policy and any related title search expenses;

ii. The cost of any survey(s) obtained by Assignee;

iii. The costs for the environmental assessment report obtained by Assignee;

iv. Any recording fees or other title company or closing expenses relating to the transfer of title to the Project.

v. Taxes, assessments, drainage assessments or similar governmental charges that have or can become a lien on the Project; and

vi. All of Assignee's reasonable legal fees arising out of and related to the transaction contemplated hereby.

5. **REPRESENTATIONS AND WARRANTIES OF LENDER**.

Lender represents and warrants to Borrower and Guarantor that:

a. Lender has all necessary power and authority to enter into this Agreement, all actions required to be taken by Lender to approve or authorize the execution of this Agreement and the consummation of these transactions have been taken and the consummation of the transactions contemplated hereby constitutes the valid and binding obligation of Lender in accordance with its terms.

b. Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation of or be in conflict with or constitute a default under any term or provision of any agreement or lease to which Lender is a party.

c. The person executing this Agreement on behalf of Lender is duly authorized to do so and all requisite action has been taken by Lender to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

6. **TERMINATION**.

A termination of this Agreement shall not in any way relieve any party of their respective rights and obligations under the Loan Documents.

7. **ASSIGNMENT**.

Lender's rights under this Agreement are freely assignable by Lender without Borrower's or Guarantor's consent.

8. **RELIEF FROM BANKRUPTCY.**.

In the event that Borrower shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended ("**Bankruptcy Code**"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief as to Borrower under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator of Borrower, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustments, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors Code, and such action causes Lender to seek necessary or appropriate relief, (a) Lender shall thereupon be entitled and Borrower irrevocably consents to the relief from any automatic stay imposed by Section 362 of Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in this Agreement with respect to the Project and as otherwise provided by law, and Borrower hereby irrevocably waives any right to object to such relief, and acknowledges that no reorganization in bankruptcy is feasible; (b) Borrower waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably consents that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Borrower or upon the filing of a voluntary petition by Borrower; (c) in the event that Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120 day exclusive period, Borrower shall not object to any such motion, and (d) Borrower waives any rights it may have pursuant to Bankruptcy Code Section 108(b).

9. **BANKRUPTCY COURT APPROVAL; EFFECTIVE DATE.**

Platinum shall file in the Case a motion to approve the settlement as to Platinum (the "**Motion to Approve**") to approve (i) the settlement as to Platinum under the terms of this Agreement, (ii) the transfer and conveyance by Borrower of the Project or the cooperation by Borrower and Platinum in the Foreclosure Action as set forth in paragraph 1.a. of this Agreement, (iii) the transfer by Borrower and Platinum of the Project Property to Lender or Falcon Nest, (iv) the performance by Platinum of all of its other obligations under this Agreement, and (v) the modification of the automatic stay in the Case to the extent necessary to permit Platinum to perform its obligations and for Assignee to enforce Platinum's performance

under this Agreement.  The "Effective Date" of this Agreement as to Platinum shall be the date that an order (the "Approval Order") entered by the Bankruptcy Court in the Case granting the relief requested in the Motion to Approve becomes final, non-appealable and not appealed.  The "Effective Date" as to Steven Edwards, Paul Rioux, Jr. and Ken Brasseur shall be the date when they and Assignee have executed the Development Services Agreement required under paragraph 1(i) of this Agreement, or the date execution of the Development Services Agreement has been waived by Lender.  Notwithstanding the foregoing, Borrower and Guarantor shall, effective immediately, rescind all discovery requests pending in the Foreclosure Action as provided in paragraph 1.a. of this Agreement, and Borrower and Guarantor agree that neither they or any one of them shall file any response to Lender's Motion for Summary Judgment pending in the Foreclosure Action after November 1, 2011, regardless of whether the "Effective Date" for Platinum or the remaining Guarantor occurs.

10.   **MISCELLANEOUS**.

a.   This Agreement shall be binding upon Borrower, Guarantor and Lender and shall inure to the benefit of the heirs, successors, and assigns of the respective parties hereto.

b.   This Agreement, together with all the Exhibits attached hereto and incorporated by reference herein, constitutes the entire agreement between the parties hereto, and supersedes any and all prior agreements, arrangements and undertakings between the parties, except for the Loan Documents.

c.   This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

d.   No amendment to this Agreement shall be binding on the parties to this Agreement unless such amendment is in writing and executed by all parties hereto.

e.   This Agreement and all transactions hereunder shall be governed by the laws of the State of Indiana without regard to its conflicts of laws or provisions.

f.   Neither this Agreement nor any memorandum or other similar document relating to this Agreement shall be recorded in any public records except that upon Lender's request, this Agreement may be recorded.

g.   If any term, covenant, or condition of this Agreement is held to be invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

h.   In the event performance is due on a day that is a legal holiday or weekend, performance shall be postponed to the next business day.

i.   If a party employs an attorney to enforce the provisions of this Agreement, the prevailing party shall be entitled to recover from the other party or parties to the dispute all costs and expenses of suit, including reasonable attorneys' and paralegals' fees.

  j. Each party shall also execute and deliver to the other party, such further instruments and shall take or cause to be taken such other or further action as such other party shall reasonably request at any time or from time to time in order to effectuate the terms and conditions of this Agreement. The provisions of this Subsection shall survive the execution and delivery of this Agreement.

  k. **[Intentionally omitted]**

  l. This Agreement and the transaction to occur hereunder are the free and voluntary acts of Borrower and Guarantor. Borrower and Guarantor had the opportunity to consult with counsel, and Borrower and Guarantor are not acting under duress, undue influence, misapprehension or misrepresentation by Lender.

  m. **[Intentionally omitted]**

  n. **THE PARTIES HERETO KNOWINGLY WAIVE ANY RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY CLAIM, PROCEEDING, DISPUTE OR ACTION ARISING BY, THROUGH OR UNDER THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR OTHERWISE. THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ENTER INTO THIS AGREEMENT.**

  [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have signed counterparts of this Agreement, each of which shall be deemed to be an original document, as of the date set forth above.

**BORROWER:**

EAST CARMEL, LLC

By:_____
Printed:_____
Title:_____

**GUARANTOR:**

_____
Steven R. Edwards

_____
Paul F. Rioux, Jr.

_____
Kenneth R. Brasseur

PLATINUM PROPERTIES, LLC

By:_____
Printed:_____
Title:_____

**LENDER:**

FALCON NEST, LLC

By:_____
Printed:_____
Title:_____